Henry W. **BISHOP,** Plaintiff–Appellant,

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE and Richard Belford, Trustee, Defendants–Appellees.**

Civ. A. No. 5:91CV00753 (JAC).

United States District Court,
D. Connecticut.

May 21, 1992.

---

**37.** Plaintiffs have neither alleged nor introduced    evidence of specific malice on Pineau's part.

James C. Graham, Pepe & Hazard, Hartford, Conn., for plaintiff-appellant Henry W. Bishop.

Merrell B. Green, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee U.S. I.R.S.

## RULING ON MOTION TO DISMISS APPEAL FROM BANKRUPTCY COURT

JOSÉ A. CABRANES, District Judge:

This is an appeal from the Memorandum and Order (filed Oct. 2, 1991), 132 B.R. 226, ("Memorandum and Order") of the United States Bankruptcy Court for the District of Connecticut, Alan H.W. Shiff, *Judge*, denying a declaratory judgment in *Henry W. Bishop v. United States of America Internal Revenue Service and Richard Belford, Trustee*, Adv. No. 55–88–0077 (the "adversary proceeding"), which is related to *In re Norman V. Leonard*, Case No. 5–85–00136 (the "bankruptcy case").

The questions presented in this appeal are (1) whether the appeal is moot, and (2) if the appeal is not moot, whether the *pro*

*rata* distribution requirements of 11 U.S.C. § 726(b) ("section 726(b)")[1] apply where there is only one unsecured creditor.

## Background

Plaintiff-appellant Henry W. Bishop became an officer in a Connecticut business known as Consolidated Graphics, Inc. ("Consolidated") in 1984. Leonard Norman, the debtor in bankruptcy in this action (the "debtor"), and Robert McLeod were also officers of Consolidated. During the last two quarters of 1984 and the first quarter of 1985, Consolidated failed to pay federal employee withholding[2] and social security taxes.[3] The debtor and McLeod were also officers in two other Connecticut businesses—namely, Norman Leonard Enterprises ("NLE") and Ye Old Quick Copy of Wolcott, Inc. ("Quick Copy"). NLE and Quick Copy failed to pay federal withholding and social security taxes for the years 1983 and 1984. As a result of the failure of Consolidated, NLE and Quick Copy to pay taxes, the Internal Revenue Service ("IRS") designated the debtor, Bishop and McLeod as "responsible persons" under 26 U.S.C. § 6672[4] for the "trust fund"[5] portions of the unpaid taxes. Accordingly, the IRS imposed on Bishop a 100–percent penalty as a responsible person for Consolidated's taxes, and the debtor was assessed with similar 100–percent penalties with respect to Consolidated, NLE *and* Quick Copy.[6]

---

1. Section 726(b) provides, in pertinent part, that "[p]ayments on claims of the kind specified ... shall be made pro rata among claims of the kind specified...."

2. Pursuant to 26 U.S.C. § 3402(a)(1), "every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with tables or computational procedures prescribed by the Secretary." In addition, 26 U.S.C. § 3403 provides that "[t]he employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment."

3. A social security tax is imposed on the income of every individual. 26 U.S.C. § 3101(a). 26 U.S.C. § 3102(a) provides, in pertinent part, that "[t]he tax imposed by section 3101 shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid." In addition, 26 U.S.C. § 3102(b) provides that "[e]very employer required so to deduct the tax shall be liable for the payment of such tax, and shall be indemnified against the claims and demands of any person for the amount of any such payment made by such employer."

4. 26 U.S.C. § 6672 ("section 6672") provides, in relevant part, that

    [a]ny *person* required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal the *total amount of the tax* evaded, or not collected, or not accounted for and paid over. (emphasis added).

    "The term 'person', as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). Courts have used the term "responsible person" to designate those who are liable under section 6672. *See Hochstein v. United States,* 900 F.2d 543, 548 (2d Cir.1990); *see also Howard v. United States,* 711 F.2d 729, 734 (5th Cir.1983) (citing cases considering "responsible person" under section 6672).

    While the record is clear that McLeod was designated a "responsible person" for the tax liability of all three companies, it is not evident whether he has made any payments to the IRS or how his liability might bear on the issues presented in this appeal. Inasmuch as the parties have not addressed his role beyond providing a mere introduction and background in this case, the court shall assume that McLeod is irrelevant to the remainder of this discussion.

5. A "trust fund" must be established pursuant to 26 U.S.C. § 7501(a), which provides that

    [w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

6. The liability assessed under 26 U.S.C. § 6672 is often referred to as a "100–percent penalty." As the Court of Claims in *Gens v. United States* explained,

    [t]he [IRS] is entitled to assess 100–percent penalties against any or all persons liable un-

On March 6, 1986, the debtor initiated the bankruptcy case by voluntarily filing a petition for relief pursuant to Chapter 7 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). Thereafter, defendant Richard Belford was appointed trustee (the "trustee") of the debtor's estate (the "estate"). Based on the 100–percent penalties assessed against the debtor for NLE, Quick Copy and Consolidated, the IRS filed a proof of claim in the bankruptcy case against the debtor on April 16, 1986 and amended the proof of claim on October 14, 1987.[7] In due course, the assets of the estate were liquidated and yielded $39,-378.37. After payment of administrative expenses, the balance was reduced to $37,-891.60 (the "fund"). Because the fund is not otherwise encumbered, the entire balance is available for distribution to the IRS. Therefore, the trustee sought authorization from the Bankruptcy Court to distribute the fund on account of the IRS' priority claim pursuant to 11 U.S.C. § 507(a)(7).[8] However, the balance is insufficient to pay the claims of the IRS in full.

> der section 6672 of the Internal Revenue Code. The Government can enforce these assessments until it has collected successfully an amount equal to the payroll tax liability which has given rise to the penalty assessments.... When the Government seeks satisfaction of the payroll tax liability vis-a-vis an assertion of 100–percent penalty assessments, it is entitled to choose the liable parties from whom it will collect.

615 F.2d 1335, 1339–40, 222 Ct.Cl. 407 (1980) (quotation marks and citations omitted), *appeal after remand,* 673 F.2d 366, 230 Ct.Cl. 42, *cert. denied,* 459 U.S. 906, 103 S.Ct. 209, 74 L.Ed.2d 167 (1982).

**7.** After amendment, the proof of claim stated a claim against the debtor for $9,683.05 (NLE), $32,041.96 (Quick Copy) and $25,581.97 (Consolidated).

**8.** 11 U.S.C. § 507(a) specifies the kinds of claims that are entitled to priority in distribution and the order of their priority. Section 507(a)(7) gives seventh priority to "allowed unsecured claims of governmental units, only to the extent that such claims are for—" among other things, "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity."

**9.** *See supra* note 1.

In order to prevent the IRS from attributing the distribution solely to the NLE and Quick Copy liabilities of the debtor, Bishop filed the adversary proceeding on June 28, 1988, seeking a declaratory judgment that section 726(b)[9] requires the IRS to allocate the fund on a *pro rata* basis among all three claims.[10] Bishop contended that since the language of section 726(b) refers to "claims" and not "creditors," that subsection should apply in this case since there are three claims. Memorandum and Order at 228. Rejecting Bishop's argument, the Bankruptcy Court held that "there is no legislative support for Bishop's argument that when there is only one creditor with multiple claims, those claims must be treated as if they were held by different entities and that a pro rata distribution must be made under § 726(b)." *Id.* at 229. In addition, the Bankruptcy Court held that "Bishop has not shown, nor can he, that a distribution favoring him at the expense of the IRS is equitable." *Id.* at 229. Accordingly, judgment entered in favor of defendants. *Id.* This appeal followed.[11]

**10.** Such an allocation would reduce Bishop's liability on account of Consolidated. If the IRS allocated the funds from the debtor's estate on a *pro rata* basis to each of the three claims, Bishop's liability would be reduced by approximately $14,400. As the Bankruptcy Court explained, "[t]his figure is arrived at by multiplying the fund ($37,891.60) by 38.10%, the ratio of the Consolidated liability to the debtor's total liability." Memorandum and Order 132 B.R. at 228 n. 2.

**11.** Plaintiff filed the instant appeal from the Memorandum and Order of the Bankruptcy Court on October 15, 1991. The brief of Plaintiff-Appellant Henry W. Bishop was filed on November 29, 1991, and the brief of the United States was filed December 13, 1991. In a reply brief, Bishop noted that "in response to IRS' threats to levy notwithstanding the pendency of this case, [Bishop] paid the entire Consolidated-related liability." Reply Brief of Plaintiff-Appellant Henry W. Bishop (filed Dec. 23, 1991) at 4 n. 2. In response to this note, the IRS filed the United States' Motion to Dismiss on February 6, 1992 ("Motion to Dismiss"), contending that the appeal is now moot. The Motion to Dismiss and the question presented on appeal were submitted for decision on February 28, 1992.

Oral argument on the underlying appeal was held on February 18, 1992. The Motion to Dis-

## Discussion

■ Generally, "a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) (quotation marks and citations omitted); *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 105 (2d Cir.), *cert. denied*, 493 U.S. 815, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). "The case must be 'live' at every stage of the proceeding, including the appeal." *Id.*, citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).

In the Motion to Dismiss, the IRS contends that Bishop's payment of the outstanding tax liability for Consolidated has rendered the instant appeal moot. The IRS asserts that Bishop "lacks a legally recognizable interest in the outcome of the *litigation pending before the Court.*" Appellee's Reply at 4. (emphasis in original). According to the IRS, if Bishop is successful on this appeal, and

> the Bankruptcy Court's decision is reversed, the United States would apply 38.01% of the debtor's estate towards the trust fund taxes of Consolidated. [*See supra* note 10]. Since there is no outstanding balance remaining with respect to these trust fund taxes, the debtor will be scheduled an overpayment (equal to 38.01% of the debtor's estate), which overpayment would be offset against the debtor's outstanding tax liability to the United States. Thus, reversal of the [B]ankruptcy Court's decision has a direct legal impact only upon the debtor, whose funds are at issue. Reversal of the [B]ankruptcy Court's decision would not have a direct legal effect upon the Appellant's tax liability with respect to the trust fund taxes of Consolidated (as he has paid *his* personal tax liability.)

*Id.* at 5 (emphasis in original); *see also* United States' Memorandum in Support of its Motion to Dismiss (filed Feb. 6, 1992) at 4–6.

Bishop argues that he still has a legally cognizable interest in the resolution of this appeal because: (1) "[i]f the Bankruptcy Court's decision is overturned Bishop will have effectively created the overpayment on the Consolidated liability [and] Bishop could institute an action against the United States for a refund for his overpayment any time prior to two years from the time he paid the tax. 26 U.S.C. § 6511," Appellant's Opposition at 6; (2) "[t]he outcome of this appeal is *critical* to whatever action Bishop takes to ensure restitution, either in this Court or elsewhere," *id.* at 6–7 (emphasis in original); and (3) "[a]n appeal is *not* rendered moot by mere satisfaction of the underlying judgment," *id.* at 7 (emphasis in original).

### A.

■ Bishop's first argument must be rejected because (1) he cannot establish that his payment created an excess, and (2) his right to sue for a refund is not related to the outcome of this appeal. Bishop "claims that but for the Bankruptcy Court's erroneous decision, some $14,500 in distributions from the Leonard estate on account of the Consolidated claim would have been received by [the] IRS *prior* to Bishop's coerced payment, and that his payment actually created the excess." *Id.* at 6 (emphasis in original). However, even if this court were to reverse the decision of the Bankruptcy Court, there is no basis for concluding that Bishop's payment "effectively created the overpayment." *Id.*

The undisputed facts are that the United States has *not* received a payment from the debtor's estate with respect to Consolidated, and it *has* received a payment from Bishop in the full amount of his 100–per-

miss had been filed shortly before that time, and while not yet fully briefed, the court also entertained some oral argument on the mootness issue on February 18, 1992. Thereafter, on February 20, 1992, Appellant Henry W. Bishop's Opposition to United States' Motion to Dismiss and Henry W. Bishop's Memorandum in Sup-

port of His Opposition to United States['] Motion to Dismiss ("Appellant's Opposition") were filed. The United States' Reply to Appellant's Opposition to the United States' Motion to Dismiss ("Appellee's Reply") was filed February 28, 1992.

**536**

cent penalty with respect to Consolidated. It is clear that, at *this* time, a ruling by this court in favor of Bishop would not have any direct legal impact on him because of the simple fact that he has paid in full the tax liability with respect to Consolidated. A ruling by this court that section 726(b) requires the IRS to distribute the fund *pro rata* among the three claims would simply cause an overpayment to be made by the debtor's estate with respect to the tax liability for Consolidated, which overpayment would be applied toward the debtor's outstanding tax liability to the United States. Bishop would not receive anything, and the court would have no authority or basis upon which to order a refund of any portion of Bishop's payment.

Moreover, Bishop's interest in suing independently for a refund is not related to the dispute on appeal. The question on appeal concerns the distribution of the debtor's estate. Bishop had a legal interest in the distribution of the debtor's estate before he paid in full Consolidated's tax liability, because a *pro rata* distribution may have reduced his liability. *See supra* note 10. However, once he chose to pay in full his 100–percent penalty, he lost any legal interest in the distribution of the debtor's estate and, thus, in the outcome of this appeal. Therefore, Bishop no longer has a legal interest in commencing a suit for a refund based on the issue presented on appeal— that is, the distribution of the debtor's estate. The questions raised by a suit against the IRS for a refund based on a challenge to the assessment of his 100–percent penalty are not related to the question presented on appeal. *See infra* Section E.

**12.** 11 U.S.C. § 106 provides:
(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is the property of the estate.

**B.**

■ Bishop's second basis for establishing a legally cognizable interest in this appeal is that he would have a claim for restitution. Bishop seems to believe that if this court were to reverse the decision of the Bankruptcy Court, he could ask this court for an order of restitution. *See* Appellant's Opposition at 7, 8. However, he fails to draw to the attention of the court any authority for this proposition. Moreover, as the court has determined above, it has no authority or basis on which to order a refund of any portion of Bishop's payment to the IRS, which is apparently what Bishop would be seeking in an order for restitution.

■ Finally, it is clear that the United States has not waived its sovereign immunity to be sued by Bishop for "restitution" in this case. *See* Appellee's Reply at 7–8. Bishop claims that "by filing its proofs of claim in the bankruptcy case, [the] IRS subjected itself to the Court's jurisdiction on all matters arising from the claims, including the form and manner of distribution." Appellant's Opposition at 9 n. 3. The cases on which Bishop relies for this proposition discuss a waiver of immunity section of the Bankruptcy Code, 11 U.S.C. § 106.[12] However, 11 U.S.C. §§ 106(a) and (b) by their terms apply only to suits involving "any claim against such governmental unit that is *property of the estate.*" Those subsections do not waive the immunity of the IRS in this case because Bishop's claim is not "property of the estate." Moreover, the Supreme Court has explicitly held that 11 U.S.C. § 106(c) does not waive the United States' sovereign immunity from an action seeking monetary relief. *United States v. Nordic Village, Inc.,* — U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and
(2) a determination by the court of an issue arising under such a provision binds governmental units.

(1992). Accordingly, Bishop may not seek restitution from the United States in this case, even if he were to be successful on this appeal.

### C.

Bishop's third argument in support of his position that the appeal is not moot is based on an analogy to a person who pays a judgment against him pending an appeal. This argument is not persuasive. In short, it is clear that Bishop did not pay a "judgment" against him. Bishop paid the amount for which he was liable under a 100–percent penalty assessed by the IRS. Bishop is not, however, challenging in this case his liability for the 100–percent penalty or the debtor's liability for its 100–percent penalty for Consolidated. Moreover, the case on which Bishop relies for his analogy, *Arkadelphia Milling Co. v. St. Louis S.R. Co.*, 249 U.S. 134, 145, 39 S.Ct. 237, 241, 63 L.Ed. 517 (1919), simply held that a "party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he lost thereby." While Bishop obviously contends that he has had an erroneous judgment rendered against him, the judgment of the Bankruptcy Court in this case has not been "carried into effect." The judgment in the instant case governs the distribution of the debtor's estate, and the estate has not been distributed. Therefore, even if this court were to reverse the decision of the Bankruptcy Court regarding the distribution of the debtor's estate under section 726(b), no judgment would have been carried into effect to create a loss to Bishop that the court could "restore." Any arguable loss to Bishop arose out of the payment of his liability for the 100–percent penalty assessed by the IR°, not by the entry of the judgment of the Bankruptcy Court. Accordingly, the purported analogy to a judgment debtor who pays an erroneous judgment that was rendered against him is simply inapposite; Bishop merely paid a penalty assessed by the IRS.

### D.

In an apparent effort to keep the issues presented on this appeal "live," *see Murphy v. Hunt*, 455 U.S. at 481, 102 S.Ct. at 1183, plaintiff asserts that "[a]s a practical matter, it makes no sense to scuttle this proceeding, after four years of litigation, only to leave the same bankruptcy-related distribution[ ] issue to be resolved by this very District Court in a refund action...." Appellant's Opposition at 9. It is enough to say, for the reasons stated above, that I fail to see how the distribution issue could be raised by Bishop in a subsequent and separate refund action, and Bishop offers no explanation of how such an action might keep the issue on appeal "live."

### E.

█ To fully understand the outcome of this case, it is important to appreciate how the enforcement powers of the IRS interact with the interests and rights of Bishop. As I noted above, the IRS has clear authority to hold each "responsible person" liable for the "total amount of the tax evaded, or not collected, or not accounted for and paid over." *See supra* notes 4, 6. Hence, Bishop was assessed with a 100–percent penalty for Consolidated's tax liability. Moreover, the IRS was entitled to enforce that assessment until it had collected successfully an amount equal to the payroll tax liability for Consolidated, and in doing so, the IRS was entitled to choose the liable parties from whom it sought to collect.[13] Accordingly, in this case the IRS sought to collect the penalty for Consolidated from Bishop, obviously because Bishop was able to pay. Bishop complains that "it is [the] IRS' own enforcement activity that created the situation before the Court." Appellant's Opposition at 9. However, it is clear that the IRS was entitled to engage in such enforcement activity, and there is nothing in the record to suggest that the conduct of the IRS in this case may be considered "reprehensible" in light of its authority under statute as construed by the courts.

**13.** *See supra* note 6, quoting *Gens v. United States*, 615 F.2d at 1339–40.

Notwithstanding the authority of the IRS to pursue Bishop for the collection of Consolidated's tax liability, Bishop has legal interests related to the Consolidated tax liability, some of which are no longer "cognizable," and some of which are not related to the outcome of this appeal. For instance, Bishop had a legal interest in the distribution of the debtor's estate, the issue on appeal, because he had an outstanding liability for the 100–percent penalty he had been assessed for Consolidated. If the debtor's estate had paid any amount on the Consolidated claim—for instance, because the Bankruptcy Court's ruling on the distribution of the debtor's estate had required such a payment—*before* Bishop had paid in full the amount assessed for Consolidated, Bishop's liability would have been reduced. *See supra* note 10. However, this interest was based *solely* on Bishop's outstanding liability for the 100–percent penalty he had been assessed for Consolidated. Inasmuch as he no longer has an outstanding liability for this penalty, he no longer has a "cognizable interest in the outcome" of this appeal. *Murphy v. Hunt,* 455 U.S. at 481, 102 S.Ct. at 1183.

Nonetheless, Bishop has always had, and continues to have, other "cognizable" interests to pursue with respect to his liability for Consolidated's taxes. As noted above, *see supra* Section A, he may assert a claim against the IRS in a separate action for a refund of his payment on the grounds that he is not a "responsible person" under section 6672. *See supra* note 4. However, the issues involved in any such claim have never been related to or determined by the issue presented in this case. The manner in which the debtor's estate is distributed has nothing to do with whether Bishop was a "responsible person" for Consolidated within the meaning of section 6672. Moreover, unlike Bishop's interest in this case, Bishop's interest in pursuing a refund from the IRS on the basis that he was not a "responsible party" is not moot because of the fact that he paid the 100–percent penal-

ty in full. Pursuant to 26 U.S.C. § 6511, Bishop may institute an action against the United States for a refund within two years from the time he paid the tax.[14]

▮ Finally, Bishop may have a claim for contribution against the debtor. Under Connecticut law, a responsible person has a right to contribution against other responsible persons for amounts paid in excess of his proportionate share of the total section 6672 liability. *Swift v. Levesque,* 614 F.Supp. 172, 175–78 (D.Conn.1985). It is true that, in this case, such a claim may be worthless. At most, Bishop is a potential unsecured creditor of the debtor (although he has not filed a proof of claim), and the estate has insufficient assets to pay general unsecured creditors such as Bishop. In any event, Bishop's potential claim for contribution has never been related to or determined by the issue on appeal. Put another way, the distribution of the debtor's estate does not affect or change Bishop's ability to assert or collect upon a claim for contribution. Furthermore, such a claim is not moot simply because Bishop paid in full his penalty for Consolidated as a result of IRS collection activities. Indeed, allowing a claim for contribution in such circumstances may be a "just result" because "the mere fortuity of IRS collection practices should not shift the ultimate burden of payment to only one of the parties." *Id.* at 177.

The fundamental problem in this case is that a "just result" appears to be elusive because one of the responsible persons is in bankruptcy and, therefore, the other responsible party may have to bear the burden alone.[15] Nevertheless, that cannot be a basis for construing a "cognizable interest in the outcome" of this appeal where none exists.

### Conclusion

For the reasons stated above, the issue on appeal is moot and the United States'

---

**14.** 26 U.S.C. § 6511 provides, in relevant part, that a "[c]laim for credit or refund of an overpayment of any tax imposed by this title ... shall be filed ... if no return was filed by the

taxpayer, within 2 years from the time the tax was paid." *See also* Appellant's Opposition at 6.

**15.** *See supra* note 4 (regarding McLeod's role).

Motion to Dismiss (filed Feb. 6, 1992) (Doc. #7) is GRANTED. This appeal is hereby DISMISSED.

It is so ordered.