Arnold **HOCHSTEIN**, Plaintiff–Appellee, Counterclaim Defendant,

v.

**UNITED STATES of America**, Defendant–Appellant, Counterclaim Plaintiff.

No. 625, Docket No. 89–6190.

United States Court of Appeals, Second Circuit.

Argued Jan. 12, 1990.

Decided April 3, 1990.

544

Craig A. Stewart, Asst. U.S. Atty., S.D. N.Y. (Otto G. Obermaier, U.S. Atty., Nancy Kilson, James L. Garrity, Jr., Asst. U.S. Attys., S.D.N.Y., New York City, of counsel), for defendant-appellant, counterclaim plaintiff.

Stephen R. Sugrue (Lowenthal, Landau, Fischer & Ziegler, New York City, of counsel), for plaintiff-appellee, counterclaim defendant.

Before KAUFMAN, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

In this appeal we consider the circumstances under which an individual may be held personally liable pursuant to 26 U.S.C. § 6672 for withholding and Federal Insurance Contributions Act (FICA) tax payments that his former employer failed to make. Pursuant to section 6672, the Internal Revenue Service (IRS) assessed against

plaintiff Hochstein a penalty equivalent to the amount of withholding and FICA taxes unpaid by his former employer, the Safelon Corporation (Safelon), for the first two quarters of 1981. Hochstein made partial payment and brought this action seeking a refund of the amount paid, an abatement of the unpaid assessment and an injunction prohibiting further collection efforts. The IRS counterclaimed for the balance of the unpaid assessment. After a two day trial before the United States District Court for the Southern District of New York, Leisure, J., the court denied the government's counterclaim and rendered judgment in favor of Hochstein. The government appeals.

Because we conclude that Hochstein was a person responsible for the collection and payment of Safelon's withholding taxes within the meaning of section 6672, and that his failure to comply with the statute was willful, we vacate the district court's judgment and remand with instructions to dismiss the complaint and enter judgment in favor of the government on its counterclaim.

## BACKGROUND

The district court's factfinding is largely undisputed on appeal. The following is a brief summary of those facts essential to our disposition of this case. The district court's opinion, which sets forth the background in some detail, is reported at 713 F.Supp. 119 (S.D.N.Y.1989).

From 1963 to May 1981, Hochstein was the controller of Safelon, a manufacturing business located in Westchester County, New York. Hochstein was never a shareholder, director or officer of Safelon. As controller, Hochstein was responsible for overseeing the finances of the corporation, including the preparation of the payroll and the filing of Safelon's payroll tax returns. During the tax period in question, Hochstein and Ernest Eckstein, the President and majority shareholder of Safelon, were the only two individuals authorized to sign checks on behalf of Safelon.

Safelon experienced severe financial problems beginning in the early 1970s. Due to its poor financial condition, Safelon entered into a financing agreement (the Agreement) with the firm of Rosenthal & Rosenthal (Rosenthal) in 1979. Under the Agreement, Rosenthal supplied operating funds to Safelon in return for a security interest in Safelon's accounts receivable and physical assets. Although Hochstein had no input into Safelon's decision to enter into the Agreement, he was the primary person who dealt with Rosenthal on behalf of Safelon once the Agreement was in place.

Pursuant to the Agreement, Hochstein would request that Rosenthal advance funds to Safelon, indicating the purpose for which he was requesting them. Rosenthal decided whether or not to grant Hochstein's requests based on a formula contained in the Agreement. Rosenthal did not earmark any specific purposes for the funds advanced and did not control the actual use to which the funds were put once they were given to Safelon. The indebtedness created by these advances was reduced by Safelon's accounts receivable: Safelon forwarded all checks and cash that it received directly to Rosenthal. The net effect of this arrangement was that Safelon's only operating funds were those that Rosenthal chose to provide. Nevertheless, the Agreement provided that Safelon remained responsible for making all tax payments.

In January 1981, Safelon's financial condition worsened, and Rosenthal refused to fund continuing operations. Safelon was forced to reduce its workforce to a skeleton staff, and operated only to convert the raw materials that remained in inventory into finished product. In the process, Safelon became heavily indebted to Rosenthal. As a result, Rosenthal decided to liquidate Safelon's physical assets. Thereafter, Hochstein was provided with sharply reduced funds, sufficient only to pay for the bare essentials during the liquidation process; for example, oil for a generator, gasoline for delivery trucks, and net payroll for the remaining employees, including Hochstein. Most creditors went unpaid.

Safelon ceased making the withholding and FICA tax payments from its employees' wages in the fourth week of January 1981. After that point, Hochstein requested that Rosenthal provide funds for the taxes, but Rosenthal gave Hochstein only enough money to cover net wages. Hochstein paid these net wages to the remaining employees until he left Safelon in May 1981. He also signed and filed Safelon's payroll tax return for the first quarter of 1981. This return indicates that Safelon remitted payment only for the first three weeks of the quarter.

Safelon's physical assets were liquidated some time during the spring of 1981, and the proceeds were used to reduce Safelon's debt to Rosenthal. Safelon ceased operations altogether in the second week of May 1981.

Pursuant to section 6672, the IRS assessed against Hochstein a penalty equivalent to the unpaid withholding and FICA taxes. Hochstein made partial payment and commenced this action seeking recovery of the amount paid, an abatement of the unpaid portion of the assessment, and an injunction prohibiting the IRS from taking further steps to collect the tax from him. The IRS counterclaimed for the balance of the unpaid assessment, totalling $31,577.51 plus interest.

The district court held that Hochstein was not a person responsible for collecting and paying Safelon's withholding taxes within the meaning of section 6672, and that even if he was responsible, Hochstein incurred no personal liability because he did not willfully fail to make the tax payments.

## DISCUSSION

■ Section 6672 provides, in pertinent part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall ... be liable to a penalty equal to

the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). It is well established that the statute requires two elements to be present before personal liability for unpaid withholding taxes attaches: first, the individual must be a person responsible for the collection and payment of withholding taxes, *i.e.*, he must have the authority to direct the payment of corporate funds; second, the individual's failure to comply with the statute must be willful. *See, e.g., Caterino v. United States*, 794 F.2d 1, 3 (1st Cir.1986), *cert. denied*, 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518 (1987); *Teel v. United States*, 529 F.2d 903, 905 (9th Cir. 1976); *Werner v. United States*, 374 F.Supp. 558, 560 (D.Conn.1974), *aff'd on opinion below*, 512 F.2d 1381 (2d Cir.1975). The individual against whom the assessment is made bears the burden of proving by a preponderance of the evidence that one or both of these elements is not present. *See, e.g., Calderone v. United States*, 799 F.2d 254, 258 (6th Cir.1986); *Lesser v. United States*, 368 F.2d 306, 310 (2d Cir.1966) (in banc). Hochstein failed to meet this burden.

### A. *Responsibility*

#### 1. Standard of Review

■ The preliminary question is by what standard we should review the district court's findings and conclusion on the issue of Hochstein's responsibility for the payment of Safelon's taxes. Most courts that have addressed the issue of the proper scope of review have treated the question of responsibility as a factual finding that may not be set aside unless clearly erroneous. *See Gustin v. United States*, 876 F.2d 485, 491 (5th Cir.1989); *Caterino*, 794 F.2d at 3, 5; *Maggy v. United States*, 560 F.2d 1372, 1375 (9th Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978). This approach is facially appealing because, as discussed below, whether an individual is responsible for the payment of a corporation's withholding taxes depends primarily on the factual question of the degree of control he exercises over the

corporation's finances. Nevertheless, we believe that the issue whether a person is responsible within the meaning of section 6672 presents a mixed question of fact and law. *See Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir.1987) (deciding question of responsibility as question of law when facts undisputed). Therefore, we will review the district court's findings on Hochstein's control over Safelon's finances only for clear error, and give plenary review to its conclusion that this control did not make him responsible within the meaning of the statute. *Cf. Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.*, 808 F.2d 982, 986 (2d Cir.1987) ("When a conclusion represents a mixed question of law and fact, ... that conclusion is open to full review.").

## 2. The Merits

The government argues that, in determining that Hochstein was not a person responsible for the payment of Safelon's withholding taxes, the district court incorrectly focused on Hochstein's control over Safelon's operations generally, rather than his control over the finances of the corporation. We agree.

■ The district court acknowledged that Safelon "had a duty to cease operations in order to avoid generating additional tax liabilities," 713 F.Supp. at 123, and then concluded that Hochstein was not a person responsible for payment of Safelon's withholding taxes because "Hochstein *himself* had no power to cease Safelon's operations, no power to fire the remaining supervisor[y] employees, or any input into the decision to continue processing Safelon's supplies on hand," *id.* The power to continue corporate operations, however, is not required in order for section 6672 liability to attach.

■ Courts consider several factors in determining whether an individual is responsible for collecting and paying withholding taxes, including the individual's duties as outlined in the corporate bylaws, his ability to sign checks, his status as an officer or director, and whether he could hire and fire employees. *Gephart v. Unit-*

*ed States*, 818 F.2d 469, 473 (6th Cir.1987) (per curiam). The central question, however, is whether the individual has significant control over the enterprise's finances. *See, e.g., Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir.1987); *Gephart*, 818 F.2d at 473; *Neckles v. United States*, 579 F.2d 938, 940 (5th Cir.1978) (per curiam). While Hochstein was not an officer or director and had no authority to hire and fire employees, he did exercise significant control over Safelon's finances. He had the authority to sign checks in any amount; he signed and filed Safelon's payroll tax returns; he dealt with Rosenthal on a daily basis during Safelon's financial troubles; and he oversaw Safelon's bookkeeping.

■ Hochstein maintains that, to be held liable, he would have to have the ultimate authority to determine whether the government or other creditors should be paid, and asserts that he did not have such authority. This argument is without merit. While some courts have suggested that an individual is responsible under section 6672 only if he has the power to make the final decision on the order in which creditors will be paid, *see, e.g., Maggy*, 560 F.2d at 1374, we agree with the weight of authority that "[i]t is not necessary that an individual have the final word as to which creditors should be paid in order to be subject to liability under this section. Rather, it is sufficient that the person have significant control over the disbursement of funds." *Gephart*, 818 F.2d at 475; *see Neckles*, 579 F.2d at 940; *Brown v. United States*, 464 F.2d 590, 591 n. 1 (5th Cir.1972), *cert. denied*, 410 U.S. 908, 93 S.Ct. 962, 35 L.Ed.2d 270 (1973); *see also Schwinger v. United States*, 652 F.Supp. 464, 467 (E.D.N.Y.1987) (" 'final' in this context indicates significant rather than exclusive control").

■ The district court found that Hochstein "had nothing approaching the requisite power [to disburse funds]." 713 F.Supp. at 123. This finding is clearly erroneous. The record indicates that, in addition to Hochstein's check-signing authority, he made the initial determination of the order in which large bills were to be paid, subject to President Eckstein's approval, and that he had discretion to pay smaller

bills. The fact that Hochstein was the person who requested funds on behalf of Safelon from Rosenthal also suggests that Hochstein was intimately involved in Safelon's financial affairs. Bearing in mind that Hochstein had the burden of proof on this issue, we conclude that he was a responsible person.[1] *See Howard v. United States,* 711 F.2d 729, 734 (5th Cir.1983) (issuance of small checks without approval of superior demonstrated authority to pay taxes).

## B. *Willfulness*

■ The district court went on to hold that, even if Hochstein was a responsible person, his failure to pay was not willful because he "did not give priority to other business obligations of Safelon, over the liability to the I.R.S." 713 F.Supp. at 124. While the question of willfulness in this context normally is a question of fact, *see Wright v. United States,* 809 F.2d 425, 428 (7th Cir.1987); *Schwinger,* 652 F.Supp. at 469 n. 3, we conclude that the district court erred as a matter of law in holding that Hochstein's failure to pay was not willful. *See Moore v. United States,* 465 F.2d 514, 515–16 (5th Cir.1972) (sustaining charge to jury that conduct was willful as a matter of law), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1973). Hochstein's payment of net wages to himself and other employees during the first two quarters of 1981 amounted to a willful failure to pay taxes.

■ A person willfully fails to pay withholding taxes within the meaning of section 6672 when he pays other creditors with knowledge that withholding taxes are due. *See, e.g., Wood v. United States,* 808 F.2d 411, 415 (5th Cir.1987); *Kalb v. United States,* 505 F.2d 506, 511 (2d Cir.1974),

*cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). The individual's bad purpose or evil motive in failing to collect and pay the taxes "properly play no part in the civil definition of willfulness." *Monday v. United States,* 421 F.2d 1210, 1216 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Hochstein admittedly knew that withholding taxes were not being paid. Indeed, he would be hard pressed to deny this because he was the one who normally paid the taxes. He argues, however, that his failure to collect and pay the taxes was not willful because Rosenthal provided him with funds to pay only net wages. There was no money, he asserts, with which to pay the withholding taxes. Hochstein's duty in this situation, however, was "to prorate such funds as [were] available between the Government and the employees." *Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975); *see Collins v. United States,* 848 F.2d 740, 742 (6th Cir.1988) (plaintiff's decision to pay wages and other suppliers when he knew of tax deficiency made his action willful); *Emshwiller v. United States,* 565 F.2d 1042, 1045 (8th Cir.1977) (payment of net wages with knowledge that no funds existed to pay taxes was willful failure); *Schwinger,* 652 F.Supp. at 468 n. 2. For purposes of determining willfulness, an employee to whom the corporate employer owes wages is simply another creditor.[2]

Hochstein also contends that his failure to collect and pay withholding taxes was not willful because, had he prorated the net wages between Safelon's employees and the government, he would have been subject to criminal prosecution under New York law for failure to pay wages. *See* N.Y. Labor L. § 198–a (McKinney 1986) (imposing criminal liability on officers and

1. Hochstein was identified in a bank financial document as Safelon's secretary and treasurer, and in one piece of correspondence with Rosenthal as the corporation's treasurer. While we accept the district court's finding that Hochstein was never actually an officer or director of Safelon, we believe that his being held out as an officer of the corporation, for whatever reason, is relevant to his status as a responsible person. The fact that Eckstein allowed Hochstein to be identified as a corporate officer suggests that Hochstein occupied a fairly high position within the company, and his identification as treasurer

implies that his role in Safelon's finances was more than clerical.

2. The dissent suggests that had Hochstein used a portion of the net wages to pay withholding taxes he would have disobeyed Rosenthal's instructions. Because Rosenthal did not specify the purposes for which funds were to be used once they were given to Safelon, it is unclear how Hochstein's payment of taxes could have amounted to noncompliance with Rosenthal's instructions.

agents of employer for failure to pay wages). The issue whether failure to pay wages constitutes a criminal offense under state law arose during oral argument. Counsel for Hochstein subsequently directed our attention to section 198–a, and we then requested additional briefing on the applicability of this statute and its effect on the issue of Hochstein's willfulness. After carefully considering the submissions of the parties, we conclude that Hochstein's failure to collect and pay the taxes was willful.

 Section 198–a does not render Hochstein's actions any less willful for two reasons. First, Hochstein's good faith belief that New York law required him to prefer Safelon's employees over the federal government is not a defense to liability under section 6672. As noted above, an individual's good or bad motive in failing to collect and pay taxes is irrelevant to the willfulness determination. Second, it is not at all clear that Hochstein would have been subject to state criminal prosecution had he prorated the net wages. The withholding of federal taxes is expressly authorized by New York's Labor Law. *See* N.Y. Labor L. § 193(1)(a) (McKinney 1986) (authorizing deductions from wages "made in accordance with the provisions of any law"). In addition, were we to read section 198–a of New York's Labor Law to conflict with section 6672, then the federal statute necessarily preempts the state statute. *See Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963) (preemption exists "where compliance with both federal and state regulations is a physical impossibility"); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) (proper inquiry is whether state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). New York simply could not criminalize the collection and payment of federal withholding taxes.

We appreciate the difficult situation in which Mr. Hochstein found himself during the early part of 1981. Had he prorated the funds he received from Rosenthal between the government and Safelon's employees, the employees might have refused to continue their employment, and as a result Hochstein may well have been fired. But these potential adverse consequences simply are no excuse for failing to collect and pay withholding taxes. As the Fifth Circuit stated in *Howard,* "[plaintiff] had a choice. He could have paid the taxes, accepted the consequence[ ] [of being fired], and thus avoided the penalty. Neither his discomfort over not paying the taxes, nor his desire to see them paid, makes his failure to pay any the less willful." 711 F.2d at 735.

Hochstein also contends that the employees' wages would have received priority over federal taxes if Safelon had declared bankruptcy, and therefore he was free to pay net wages without collecting withholding taxes, given that he had limited funds. While wages do receive priority in bankruptcy to the extent of $2,000 per employee, *see* 11 U.S.C. § 507(a)(3), (7)(D), this is largely irrelevant because Safelon was not adjudicated a bankrupt. Further, an individual's liability under section 6672 is separate and distinct from the corporation's tax liability. , *See Emshwiller,* 565 F.2d at 1047; *Moore,* 465 F.2d at 517. Thus, even if Safelon had sought protection under the bankruptcy laws, the IRS still could have assessed against Hochstein himself a penalty equivalent to any unpaid taxes. *See Spivak v. United States,* 370 F.2d 612, 616 (2d Cir.) (IRS' compromise of a claim against bankrupt corporation did not release individuals from their direct liability), *cert. denied,* 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967). Safelon's potential bankruptcy therefore does not insulate Hochstein from liability.

## CONCLUSION

The district court's findings concerning Hochstein's control over Safelon's finances were clearly erroneous. Hochstein had significant control over Safelon's finances, and therefore was a person responsible for the collection and payment of Safelon's withholding taxes under 26 U.S.C. § 6672. The court erred as a matter of law in holding that, even if Hochstein was a responsible person, his failure to pay the taxes was not willful. Accordingly, we vacate the district court's judgment and re-

mand with instructions to dismiss the complaint and enter judgment in favor of the IRS on its counterclaim.

No costs.

JON O. NEWMAN, Circuit Judge, dissenting:

Arnold Hochstein was the controller of a company that went out of business. Two years before the end, a financing firm, Rosenthal & Rosenthal ("Rosenthal"), effectively took over financial control of the company, Safelon Corporation ("Safelon"), supplying operating funds in return for a security interest in the company's receivables and assets. Four months before the end, Rosenthal decided to liquidate the company and keep only enough employees to maximize revenues during the liquidation. All funds disbursed by Hochstein to pay bills came from Rosenthal. Hochstein requested sufficient funds to pay the net wages and the withholding taxes of the few remaining employees. Rosenthal refused, providing instead only funds to pay net wages. Hochstein continued with his duties during the final four months of the company's existence, often working in his overcoat because Rosenthal did not supply enough money for heat. For his trouble, Hochstein, whose annual salary was $35,000, is now held personally liable for some $30,000 in withholding tax penalties, an amount equal to the taxes due, but uncollected from, Safelon.

I do not believe the Government's need for taxes or the requirements of federal law justifies the Court's imposition of "responsible person" liability upon Arnold Hochstein. *See* 26 U.S.C. § 6672 (1982). The District Court ruled in his favor. From the reversal of that ruling, I respectfully dissent.

As the majority recognizes, the central question in determining whether a person is "responsible" under section 6672 is whether the individual has significant control over the enterprise's finances. In the waning days of Safelon's existence, Hochstein had no such control. All of Safelon's revenue was turned over to Rosenthal. All funds for Safelon's operations had to be requested from Rosenthal. Rosenthal disbursed no money to Safelon unless the

purposes for which the money was requested, almost entirely employees' net wages, was precisely set forth. Though, as the District Court noted, Rosenthal did not formally "earmark" specific purposes for the funds, 713 F.Supp. at 121, its provisions of precise dollar amounts sufficient in the aggregate to pay for only those items of the requested expenses that it chose to fund made it perfectly clear to Hochstein that Rosenthal, not Hochstein, was making the decision as to which bills should be paid. With respect to taxes, the matter could not have been clearer. Hochstein specifically requested enough money to pay to the few remaining employees their net wages *and* to pay to the I.R.S. the withholding taxes due with respect to those wages. As the District Court found, "In making requests for disbursements from Rosenthal, Hochstein stressed that payment of the employment taxes was of the 'highest priority.'" *Id.* at 122. In response to this emphatic request, Rosenthal refused to supply the money needed to pay taxes, choosing instead to furnish only enough money to pay net wages and one or two *de minimis* operating expense bills.

Once this limited amount of cash arrived, Hochstein realistically had no choice except to write checks for the items Rosenthal had decided to supply funds. If taxes were to be paid from those limited funds, a decision would have been required either to pay the employees less than their net wages, which would have resulted in their quitting and would likely have violated state law, or to reduce expenses by discharging some of the employees, thereby accelerating the rate of the company's shutdown. But those are business decisions that were in the hands of Rosenthal, the financier, and Ernest Eckstein, Safelon's president and majority shareholder. As the District Court explicitly found, "Hochstein was *not*, however, involved in any business decisions involving the operation or production aspects of the plant, including whether raw materials were to be purchased or processed, whether the plant would continue to operate in any capacity, or whether employees would be laid off." *Id.*

Hochstein can be deemed a "responsible person" only if that phrase covers any em-

ployee authorized to sign checks. The statute is not that broad. It imposes liability on persons who exercise some authority with respect to the decision whether or not to pay taxes. In the final four months of Safelon's operations, with its financier calling the shots and supplying all its funds, Hochstein's relationship to the checkbook was solely that of a scribe, not a decisionmaker. The Government should collect its taxes from those who made the decision not to pay them.

Hochstein's lack of real decision-making authority may usefully be contrasted with that of the defendant in *Howard v. United States*, 711 F.2d 729 (5th Cir.1983), on which the majority relies. At the end of the period during which the defendant in *Howard* failed to pay withholding taxes, the company had "a substantial amount of money on deposit at its bank." *Id.* at 732. It is one thing to say that a defendant with check-signing authority for an on-going business with substantial cash in the bank is realistically making choices as to whether taxes should be paid and is "responsible" for not paying withholding taxes when he fails to write checks to the I.R.S. It is quite another to reach the same conclusion where a business is failing and its de facto receiver, while liquidating its assets, is supplying only the funds necessary to pay employees' net wages, despite the check-signer's request for sufficient money to pay taxes in full.

I also disagree with the Court's rejection of the significance of the New York statute that imposes criminal liability on agents of employers who fail to pay wages. *See* N.Y. Labor L. § 198-a (McKinney 1986). Noting that New York law authorizes withholding of federal taxes, the Court says it is not clear that Hochstein would have been subject to state prosecution had he "prorated the net wages." In allowing withholding, as it must in view of paramount federal law, New York would have permitted Hochstein to withhold a typical percentage, say 18 percent, from a *gross* wage payment. Had Rosenthal provided $100 for an employee's gross wages, Hochstein could have paid the employee $82 net wages and sent $18 to the I.R.S. But when Rosenthal provides Hochstein with only *net* wages for that employee, *i.e.*, $82, I seriously doubt that New York would consider lawful a payment to that employee of only $64. Yet that is the payment the Court holds that Hochstein should have made. Of course, New York cannot criminalize withholding $18 and paying the employee his true net wages of $82. But New York has the clear right to insist that employees receive their full *net* wages, *i.e.*, net of just one bite of withholding taxes, not two.

After hearing all the evidence in this bench trial, Judge Leisure concluded that Hochstein was not a "responsible person." I do not understand in what respect he erred. Because I believe that his findings are fully supported, perhaps even compelled, by the evidence and that his ultimate conclusion is entirely consistent with applicable law, I dissent.