Albert A. ALSHESKIE, Plaintiff–Counter–Defendant–Appellee,

v.

UNITED STATES of America, Defendant–Counter–Claimant–Appellant.

No. 93–55003.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1994.

Decided July 29, 1994.

**838**

Gary R. Allen, Richard Farber, Joan I. Oppenheimer, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant-counter-claimant-appellant.

Evelyn J. Gruen, Simi Valley, CA, for plaintiff-counter-defendant-appellee.

Before: FARRIS, O'SCANNLAIN and TROTT, Circuit Judges.

Opinion by Judge FARRIS; Dissent by Judge TROTT.

FARRIS, Circuit Judge:

The district court held that Albert Alsheskie, president of Lion Manufacturing, Inc., was not liable for penalties assessed against him under 26 U.S.C. § 6672 based on Lion Manufacturing's failure to pay its 1986 taxes in full. The government appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

The controlling law is settled. The Internal Revenue Code requires certain employers to withhold and pay over federal income taxes and social security taxes from the wages of their employees. *See* 26 U.S.C. §§ 3102, 3402. Section 6672 is one means available to the government to insure that income taxes are withheld and paid over. To incur liability under § 6672, a person must be a "responsible party" who willfully fails to collect and pay over taxes that are due.[1] *Purcell v. United States,* 1 F.3d 932, 937 (9th Cir.1993). A "responsible party" is one who has the "final word as to what bills should or should not be paid, and when." *Dudley v. United States,* 428 F.2d 1196, 1201 (9th Cir. 1970). One has the "final word" over what bills should be paid if he has "the authority required to exercise significant control over the corporation's financial affairs." *Purcell,* 1 F.3d at 937.

## FACTS

In the fall of 1985, Pro Quality Enterprises, d/b/a/ Pro Quality Manufacturing, Inc., a sheet metal manufacturing company, defaulted on a financing contract with Lion Financial Services, d/b/a Commercial Financing Services. Commercial Financing then took possession of Pro Quality's assets and formed Lion Manufacturing, Inc. to continue Pro Quality's operations. Commercial Financing and its president, Lynn Sopwith, were the only shareholders of Lion Manufacturing. Alsheskie became Lion Manufacturing's president and chairman of the board in November 1985. He held these positions at all times pertinent to the issue before the court. His duties included (1) managing the corporation's day-to-day activities, (2) hiring and firing employees, (3) setting employees' wages, (4) signing payroll checks and checks

---

1. Section 6672(a) provides, in pertinent part: Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax ... not collected ... and paid over.
   26 U.S.C. § 6672.

to creditors and (5) preparing accounting records. He also prepared and signed all of Lion Manufacturing's tax returns.

Under its financing agreement with Commercial Financing, Lion Manufacturing turned over all checks received to Commercial Financing, which returned 20% of those funds to Lion Manufacturing, Inc. Alsheskie used those funds to pay employee wages. The funds were not used to pay Lion Manufacturing's tax obligations. It is undisputed that by February 1986, Alsheskie knew that Lion Manufacturing was delinquent in paying its federal employment taxes, a matter that he discussed with Lynn Sopwith. Sopwith assured Alsheskie that he would take care of the tax problems "later." In May 1987, Alsheskie and a partner bought Lion Manufacturing from Commercial Financing Services. Prior to May 1987, Alsheskie had no ownership interest in Lion Manufacturing.

In October 1988, the IRS made an assessment against Alsheskie under § 6672 for $69,162 for the first three quarters of 1986 and the third quarter of 1987. After a hearing, the district court determined that Alsheskie was not a responsible party during 1986 for purposes of § 6672 and that he did not willfully fail to pay Lion Manufacturing's taxes during this period. However, the court concluded that by 1987, when Alsheskie became Lion Manufacturing's co-owner, he was a responsible party and did willfully fail to pay the company's taxes. The court upheld that IRS's assessment for the third quarter of 1987, but not for the first three quarters of 1986. The government appeals.

## DISCUSSION

■ We review the factual determination that Alsheskie was not a responsible party who willfully failed to pay taxes for clear error. *Maggy v. United States*, 560 F.2d 1372, 1375 (9th Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978); *see also Raba v. United States*, 977 F.2d 941, 943 (5th Cir.1992).

■ The record satisfies us that the district court's pivotal conclusion (wherein the court summarized its factual findings) is Conclusion of Law # 16. The court found that even though Alsheskie was the titular head of the Corporation, had sole signature authority over its only checking account and signed numerous checks, signed contracts, hired and fired employees and managed the day to day operations of the corporation, *he did not have discretionary authority to pay the Corporation's withholding taxes* during the first three quarters of 1986. Rather the control that [Commercial Financing] maintained over the financial operations of [Lion Manufacturing], through its accounts receivable financing arrangement, precluded Alsheskie from paying the Corporation's tax obligations.

(emphasis added). We cannot say upon the record before us that the finding lacks support or that it fails to support the ultimate conclusion.

■ Alsheskie was an employee, not an owner during the critical period. His authority was limited not by the directions of the owners of Lion Manufacturing, *see Brounstein v. United States*, 979 F.2d 952, 955 (3d Cir.1992); *Roth v. United States*, 779 F.2d 1567, 1572 (11th Cir.1986); *Howard v. United States*, 711 F.2d 729, 734 (5th Cir.1983), but by the financing arrangement. He did not have "significant control" over what bills to pay or not pay since that control remained, as the district court found, with the parent corporation, Commercial Financing.

■ *Hochstein v. United States*, 900 F.2d 543 (2d Cir.1990) does not require a different result. In *Hochstein*, the record contained no evidence that Hochstein, the responsible party, was without authority to pay the taxes. Here, in contrast, Alsheskie submitted an affidavit stating that

Leon Lyon [Chairman of the Board of Commercial Financing] and Lynn Sopwith played key and integral roles in financing the operations of Lion Manufacturing, Inc. and their control over the financial operations of Lion Manufacturing essentially precluded me from exercising the degree of autonomy, authority and control necessary to be able to pay the payroll tax liabilities of Lion Manufacturing, Inc. . . . on a timely basis.

The government chose not to cross examine Alsheskie or rebut his affidavit with contrary testimony. The district court did not clearly err in holding that Alsheskie was not a responsible party.

The taxes are due and must be paid, but Alsheskie is not a responsible party and therefore not subject to the penalty of § 6672.[2]

AFFIRMED.

TROTT, Circuit Judge, dissenting:

The majority concludes Alsheskie is not a responsible party under § 6672 of the Internal Revenue Code. I disagree. I believe the case law in this and other circuits, when applied to the facts as the district court found them, clearly indicates Alsheskie is a responsible party who willfully failed to pay the taxes owed. He should be subject to the § 6672 penalty.

**I**

Courts generally look at a wide range of factors to determine responsible person status. An individual is more likely to be considered responsible if he or she (1) holds an office or owns stock in the corporation, (2) manages the day-to-day operations of the business, (3) makes decisions as to disbursement of funds and payment of creditors, (4) has check-signing authority, (5) has authority to sign corporate tax returns, and (6) can hire and fire employees. *See Denbo v. United States,* 988 F.2d 1029, 1032 (10th Cir. 1993); *Brounstein v. United States,* 979 F.2d 952, 954–55 (3rd Cir.1992); *Raba v. United States,* 977 F.2d 941, 943 (5th Cir.1992). The district court found Alsheskie possessed all of the indicia of responsibility: "Mr. Alsheskie was the titular head of the Corporation, had sole signature authority over its only checking account and signed numerous checks, signed contracts, hired and fired employees and managed the day-to-day operations of the Corporation."

Like the district court, however, the majority disregards all of these indicia of re-

sponsibility and instead relies on Alsheskie's claim that he did not have the "authority and control" to pay the company's taxes. The facts, however, do not support this claim. The district court essentially admitted this when it stated, "[T]here is no specific evidence before the Court that Mr. Sopwith [President of Commercial Financing] would review individual bills and direct Mr. Alsheskie to pay certain bills and not others." The district court cast further doubt on Alsheskie's claims, stating that the government "correctly observed that some of the statements in the declaration were conclusory in nature and appeared to be at odds with the stipulated facts (i.e., that the plaintiff had authority to sign payroll checks and checks to other creditors ...)."

Alsheskie chose to use the funds Commercial Financing provided to pay employees, suppliers and other creditors rather than to pay the company's tax obligations. But in doing so, he acted illegally. "Employees to whom wages are owed are but a particular type of creditor. There is no basis in law for preferring the wage obligation to them over the withholding obligation to the Government." *Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975). "It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business." *Collins v. United States,* 848 F.2d 740, 741–42 (6th Cir.1988).

Alsheskie had all of the indicia of responsibility, and he had the authority and the check-signing power to pay Lion Manufacturing's tax obligations. That he was under pressure to use the funds Commercial Financing provided to keep Lion Manufacturing functioning does not make him any less responsible for his failure to pay the taxes. I believe the district court's conclusion that Alsheskie was not a responsible person for the purposes of § 6672 is clearly erroneous.

---

2. Since we affirm on the basis that Alsheskie was not a "responsible party" within the meaning of § 6672, we need not address the district court's

conclusion that Alsheskie's failure to pay the taxes was not willful.

## II

Because the majority determined Alsheskie was not a responsible party, it did not discuss whether his failure to pay the taxes was willful. I believe, however, the district court clearly erred in concluding Alsheskie did not willfully fail to pay Lion Manufacturing's 1986 taxes because he relied on Lynn Sopwith's assurances that Commercial Financing would pay the taxes at a later date. Reliance on another's assurances that the taxes will be paid should not excuse an otherwise willful failure to pay.

"[A] long line of decisions in this circuit has defined willfulness 'as a voluntary, conscious and intentional act to prefer other creditors over the United States.'" *Purcell v. United States,* 1 F.3d 932, 938 (9th Cir. 1993) (quoting *Davis v. United States,* 961 F.2d 867, 871 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993)). The government need not prove intent to defraud or other bad motive. *Davis,* 961 F.2d at 871. "In fact, conduct motivated by a reasonable cause may nonetheless be willful." *Id.* We have held that "the payment of net wages in circumstances where there are no available funds in excess of net wages from which to make withholding is a willful failure to collect and pay over under § 6672." *Sorenson,* 521 F.2d at 328; *see Purcell,* 1 F.3d at 938 (same).

We have not previously addressed the question of whether reliance on the assurances of others will exempt an otherwise willful violation from the § 6672 penalty. However, the circuits that have considered this question have concluded a responsible person cannot rely on assurances that the taxes will eventually be paid. The taxpayer in *Denbo v. United States,* 988 F.2d 1029 (10th Cir.1993), relied on the corporation president's statement that he "had everything worked out." The Tenth Circuit held, "Denbo cannot escape liability by claiming that he relied on the assurances of others." *Id.* at 1033–34. Similarly, the Sixth Circuit held, in *Collins v. United States,* 848 F.2d 740, 742 (6th Cir.1988), that the corporation president's reliance on the majority shareholder's promise to cover the taxes "makes his conduct no less willful within the contemplation of the statute." *See also Roth v. United States,* 779 F.2d 1567, 1572 (11th Cir.1986) (vice president's reliance on president's statement that he would pay the taxes as soon as a real estate deal closed does not exempt him from § 6672 liability).

These decisions are consistent with both the language of the statute and the bulk of § 6672 case law, which is generally unsympathetic to responsible parties attempting to excuse their failure to turn over withheld tax funds to the government. It is no excuse for a responsible person to claim he or she could not pay the taxes because the money went towards employee salaries. Nor is it an excuse that the responsibility for paying the taxes had been delegated to another person. *Purcell,* 1 F.3d at 937. It should also be no excuse that a responsible party relied on the assurances of others that the taxes would be paid at some later date.

## III

Not only does the majority's holding run counter to the facts in this case and the law of this and other circuits, it compromises the government's efforts to ensure that taxes are withheld and paid over. Otherwise responsible officers of subsidiary companies can now excuse their failure to pay corporate taxes by claiming the parent company controlled the corporate finances. And responsible parties will continue to argue that their failure to pay over the taxes was not willful because they relied on the assurances of others that the taxes would eventually be paid. The majority has created an unfortunate loophole in what had been a potent weapon against tax fraud.