**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Alan JONES, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Renate SCHIFF, Executrix of the Estate**
**of Marvin James Schiff, Defendant–**
**Appellant.**

Nos. 92–15718, 92–16639.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1993.

Decided Aug. 29, 1994.

Jon R. Vaught, Oakland, CA, for defendant-appellant Jones.

Mark Gibbons, Oshins, Gibbons, Berkley, Segal, Berman & Wolfson, Las Vegas, NV, for defendant-appellant Schiff.

Gary R. Allen, Charles E. Brookhart, Jordan L. Glickstein, Tax Div., U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: HUG, FARRIS, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

After a bench trial, the presiding magistrate judge found that the defendants in this case were liable under Internal Revenue Code ("IRC") § 6672 as responsible persons who willfully failed to collect, truthfully account for and pay over to the United States payroll taxes. We have jurisdiction under 28 U.S.C. § 1291. Because we hold that the factual finding that the defendants are "responsible persons" under § 6672 is clearly erroneous, we reverse the decision of the district court.

## I. PRIOR PROCEEDINGS AND FACTUAL BACKGROUND

Marvin James Schiff ("Schiff") was the owner of real property in Las Vegas and a hotel and casino built on the property. Schiff formed a corporation which owned and operated the Grand Opening Motor Inn, dba Nevada Palace Casino and Motor Inn (the "Nevada Palace"). Robert F. Mariscal ("Mariscal") became Chairman of the Board, the principal stockholder, a principal of the corporation, and the gaming licensee and operator of the hotel and casino. Eugene Lucas ("Lucas") became president, a principal stockholder, and general manager and was a co-defendant in this action, but settled with the United States prior to trial. Schiff was the landlord for the Nevada Palace and charged rent of $80,000 per month. During its entire operating life, the Nevada Palace experienced severe financial difficulties. Its rental payments to Schiff fell into arrears early on, and it also had difficulty meeting payroll and other obligations.

In March 1980, Robert Alan Jones ("Jones") was hired as a consultant to Mariscal and as a liaison between Mariscal and Schiff. At trial, Jones testified that "Mr. Mariscal and Mr. Schiff jointly asked [him] if [he] would briefly help Mr. Mariscal on a consulting basis to put together a new management and operational team and to develop a financial plan for the hotel and casino operations." After this offer, "Mr. Mariscal and [Jones] signed a one-page consulting agreement in which [Jones] agreed that [he] would report to [Mariscal] and provide consulting services on and off the premises, and [Mariscal] agreed to compensate [Jones] for [his] time and [his] efforts." Mariscal terminated Jones at the end of April 1980, and never compensated him for his services.

In April 1984, Schiff and Jones were assessed in the amount of $79,460.83 as responsible persons under IRC § 6672 for failure to pay over federal income and social security taxes withheld from the pay of the Nevada Palace employees for the first and second quarters of 1980. Both were subsequently assessed with interest in the amount of $26,697.31 on December 15, 1986.

On April 11, 1990, the United States filed the instant civil action in the District Court for the District of Nevada against Jones and Renate Schiff, Executrix of the Estate of Marvin James Schiff. Pursuant to Internal Revenue Code ("IRC") § 6672[1], the United

---

**1.** Section 6672(a) of the Internal Revenue Code provides in part that

[a]ny person required to collect, truthfully account for, and pay over any tax imposed by

States alleged that Schiff and Jones were responsible persons who willfully failed to collect, truthfully account for and pay over to the United States taxes withheld from the employees of the Nevada Palace, for the taxable periods ending March 31, 1980 and June 30, 1980. The magistrate judge, finding that Schiff and Jones were "responsible persons" and "willful," held them liable to the United States in the amount of $79,460.83 each, plus interest. Both Schiff and Jones appeal.

## II. DISCUSSION

### A. Standard of Review

■ A district court's finding of fact as to an individual's status as a responsible person "cannot be set aside unless it is 'clearly erroneous.'" *Maggy v. United States*, 560 F.2d 1372, 1375 (9th Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978); *see also Alsheskie v. United States*, 31 F.3d 837, 839 (9th Cir.1994) (Farris, C.J.).

### B. Liability Under § 6672

The Internal Revenue Code requires employers to withhold federal income and social security taxes from the wages of their employees. 26 U.S.C. § 3402. The amounts withheld constitute a special fund held in trust for the benefit of the United States and are paid over quarterly. 26 U.S.C. § 7501(a). Under IRC § 6672, the IRS may assess a 100% penalty on responsible persons who willfully fail to collect, account for, and pay over the taxes to the United States. A "person" includes "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

For the United States to assess the 100% penalty under § 6672, two requirements must be met: (1) "the party assessed was a 'responsible person' i.e. one required to collect, truthfully account for and pay over the

tax," and (2) "willfully refused to pay the tax." *Teel v. United States*, 529 F.2d 903, 905 (9th Cir.1976). Introducing Certificates of Assessments and Payments establishes a prima facie case for the United States. *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir.1990). "The individual against whom the assessment is made bears the burden of proving by a preponderance of the evidence that one or both of [the elements of responsibility and willfulness] is not present." *Hochstein v. United States*, 900 F.2d 543, 547 (2d Cir.1990).

### C. The Responsibility Prong

Under § 6672, persons responsible have the "final word as to what bills should or should not be paid and when." *Purcell v. United States*, 1 F.3d 932, 936 (9th Cir.1993) (quotations omitted) (sole authorized signatory who was president and sole shareholder liable under § 6672 despite delegation of financial matters to chief financial officer). The final word does not mean "final" but instead "the authority required to exercise *significant* control over the corporation's financial affairs, regardless of whether [the individual] exercised such control in fact." *Id.* at 937 (emphasis added); *see also Turner v. United States*, 423 F.2d 448, 449 (9th Cir.1970) (finding that "[i]n this context 'final' means significant, rather than exclusive control").

"[R]esponsibility is a matter of status, duty, and authority, not knowledge." *Davis v. United States*, 961 F.2d 867, 873 (9th Cir.1992) (president and major shareholder liable under § 6672 because he paid other creditors rather than the delinquent taxes), *cert. denied*, —— U.S. ——, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993). "Authority turns on the scope and nature of an individual's power to determine how the corporation conducts its financial affairs; the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so." *Purcell*, 1 F.3d at 937.

this title who willfully fails to collect such tax, or truthfully account for and pay over such tax ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the

total amount of the tax evaded, or not collected, or not accounted for and paid over.
26 U.S.C. § 6672(a).

■ Although an individual's daily functions may be unrelated to financial or tax-related decision-making, that individual may be "responsible" by having the "authority to pay or to order the payment of delinquent taxes." *Id.* An individual who does not have the authority and control to pay the payroll taxes may not be "responsible." *See Alsheskie,* 31 F.3d at 839–40 (defendant not "responsible" when he submitted an affidavit indicating that the parent corporation "essentially precluded [him] from exercising the degree of autonomy, authority and control necessary to be able to pay the payroll tax liabilities ... on a timely basis"). Courts must look beyond official titles to the actual decision-making process. *Godfrey v. United States,* 748 F.2d 1568, 1575 (Fed.Cir.1984) (chairman of the board of directors not liable under § 6672 because there was no evidence that he had or exercised control over collection, accounting for, or payment of taxes).

The Second Circuit outlined factors relevant to whether an individual is "responsible" under § 6672 in *Hochstein,* 900 F.2d at 547, stating that "the individual's duties as outlined in the corporate bylaws, his ability to sign checks, his status as an officer or director, and whether he could hire and fire employees" were important factors to consider. In *Hochstein,* the Second Circuit found the defendant "responsible" because as controller of the company, he had check signing authority and the discretion over which creditors to pay. *See also Gephart v. United States,* 818 F.2d 469, 473 (6th Cir.1987) (general manager "responsible" because he had authority to initially determine which creditors to pay). The most critical factor was having "significant control over the enterprise's finances." *Hochstein,* 900 F.2d at 547.

## D. Are Schiff and Jones "Responsible"?

### 1. Schiff

■ Regarding Schiff, the court found that "[a]s the landlord to whom the corporation owed substantial past due rent, Schiff was in a position to and did wield significant influence over the management decisions of the corporation." *See* Findings of Fact and Conclusions of Law at 4. The court also stated that "Schiff was aware that the employment taxes for the first and second quarters were accruing, yet during that period he directed that a portion of the rent be paid to himself instead of directing that the delinquent taxes be paid to the Internal Revenue Service." *Id.* Deciding that Schiff met the definition of a "responsible person," the court held that

[a]s the landlord of the corporation, and as a person who was interested in acquiring an interest in the corporation, Schiff was in reality one of the corporation's most important creditors. He had a vital interest in the continued viability of the business. At the same time he had the economic power to destroy the corporation. The context and dynamics of the relationship between Schiff and the corporation—more particularly between Schiff and the corporation's principal owner, Mariscal—clearly reflect that Schiff exerted enormous influence and control over the financial affairs of the corporation. As part of a plan to bring in a new management team Schiff required Mariscal to hire Jones. Schiff frequently demanded and received cash payments from the casino cage in partial satisfaction of rent past due to him. He infused cash into the business as loans to help it pay other high priority creditors.

*Id.* at 7. The court also found that Schiff participated in "controlling the decision-making process regarding the allocation of funds among creditors." *Id.*

We find that on the basis of the record before us these findings, deeming Schiff a "responsible person," are clearly erroneous because they are not supported by the evidence.

The record does not show that Schiff exercised significant influence over the management decisions of the corporation, nor does it indicate that Schiff helped control the decision-making process regarding the allocation of funds among creditors.

Schiff was never a shareholder, director, officer, or employee of the Nevada Palace and did not have signatory power on operational or payroll accounts. The fact that Schiff was an aggressive landlord who de-

manded and received cash payments to satisfy rent past due to him in no way suggests that Schiff had the authority to pay the payroll taxes. *See Purcell,* 1 F.3d at 937 ("the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so"). Further, although Schiff spent time in the hotel and casino and engaged in financial discussions with Mariscal and other management personnel, making Schiff aware of the Nevada Palace's liabilities, including the unpaid payroll taxes, he did not have the requisite status, duty, and authority to pay the taxes. *See Alsheskie,* 31 F.3d at 839 (upholding district court's finding that defendant was not a "responsible person" because "he did not have discretionary authority to pay the Corporation's withholding taxes"); *Davis,* 961 F.2d at 873 ("responsibility is a matter of status, duty, and authority, *not knowledge* ") (emphasis added).

The record is void of any specific evidence that Schiff had or exercised any control over which creditors were paid. In fact, Schiff loaned money to Mariscal on the condition that Mariscal pay the payroll taxes, evidencing that Schiff had no authority to pay the taxes directly. Schiff even endorsed checks made out to Schiff for rent "For Deposit to the Grand Opening Motor Inn Payroll Account."

Schiff did not have authority to hire or fire employees. While Schiff did bring in Jones, Mariscal and Jones signed the consulting agreement under which Jones reported to Mariscal. In addition, Mariscal fired Jones in late April 1980.

Therefore, the court's finding that Schiff was a "responsible person" because he exercised enormous influence over the corporation's financial affairs and the payment of creditors is clearly erroneous, and we reverse the district court's holding that Schiff is liable for the payroll taxes for the first and second quarters of 1980.[2]

---

**2.** Since we reverse the district court's finding of liability on the basis that Schiff was not a "responsible person" within the meaning of § 6672,

### 2. Jones

As to Jones, the court concluded that he had "significant control over the corporation's finances." *See* Findings of Fact and Conclusions of Law at 6–7. The court found that

> Jones had check writing authority and indeed issued checks to various creditors in preference to the Internal Revenue Service. For all practical purposes, Jones had succeeded Lucas as the "general manager" of the hotel and casino. He was "hired" precisely to lend a strong managerial hand to a faltering business. Due to meager revenues and the constant pressure of numerous creditors, Jones was integrally involved in the process of deciding which creditors to pay and which to stall.

*Id.* at 7.

The evidence in the record does not support the finding that "Jones was integrally involved in the process of deciding which creditors to pay and which to stall." Instead, the record indicates that during his 45–day tenure, Jones signed checks out of the *operational* account to pay creditors on a list established by Mariscal. Jones did not have the authority to sign checks alone since the checks required two signatures of the several people authorized to sign. Jones testified that Mr. Mariscal made him a signatory on the operational account

> because Mr. Mariscal did not want to have to be present to sign all of the daily operating checks himself, and he wanted to make sure that he had someone that he thought he could trust who would not overpay or pay improper amounts to creditors that he did not authorize.

Before paying checks that exceeded a certain amount of money or that went to creditors who were not on Mariscal's list, Jones was required to take those checks to Mariscal for approval. Jones testified that he

> was put in the position as a damage control officer, so to speak, and *it was to prevent checks from being sent out which had not been cleared or authorized by Mr. Maris-*

we need not address whether Schiff "willfully" failed to pay the payroll taxes.

*cal,* who wasn't in the business of signing most of the checks on a day-to-day basis. So if the check had to come past [Jones], [he] would know what was being spent out of the operational account.

There is no evidence that Jones picked certain creditors to pay or that Jones had any authority or control over the payroll account. In addition, nothing in the record indicates that Jones prevented money from being put in the payroll account to pay the payroll taxes; in fact, the record is void of evidence that Jones had any connection to the payroll account. Jones' lack of control and authority over the payroll account and the payment of payroll taxes supports our holding that he was not a "responsible person" because he did not have the ability to pay the payroll taxes. *See Alsheskie,* 31 F.3d at 839 (upholding district court finding that defendant was not a "responsible person" because "he did not have discretionary authority to pay the Corporation's withholding taxes").

Through meetings with Schiff and Mariscal, Jones was aware that employment taxes for the quarter ending March 30, 1980 had not been paid. This knowledge, however, in no way shows that Jones was a "responsible person" because he did not have authority over the payroll accounts or the payment of the taxes. *See Davis,* 961 F.2d at 873 (knowledge of unpaid payroll taxes does not render one a "responsible person" without the status, duty, and authority to pay the taxes).

At no time was Jones an officer, director, employee, attorney, or stockholder of the Nevada Palace. He only acted as consultant for 45 days and was out of town for part of that time. Within this short time, Jones did not have the status, duty, or authority to exercise "significant" control over financial affairs and to direct payment of creditors, especially the payroll taxes owed to the United States. In addition, the evidence as to whether Jones had the authority to hire and fire employees is ambiguous at best. The evidence seems to indicate that Jones recom-

mended individuals to Mariscal who made the final hiring decisions. There is no evidence in the record that Jones fired anyone.

Jones was also aware of the limitations of his involvement at the Nevada Palace and discussed his and Schiff's involvement at the casino with the Nevada Gaming Control Board when subpoenaed. Because he did not have a gaming license, Jones understood that his involvement with the casino was limited; he testified that knew that

> [b]ecause gaming is a privileged industry and [he had not] held nor applied for a gaming license, [he] was restricted and not allowed to have any operational control of any functions at the Nevada Palace, [he] was not allowed to give direction or exercise authority over any employees at the Nevada Palace, [he] was not allowed to be in the count room, [he] was not allowed to participate with respect to the handling of money, and it was clear to [him] that [he] was only allowed to act as a consultant because [he] was neither an employee, officer, shareholder, director, or licensee.

The record, therefore, lacks support for the court's finding that Jones was a "responsible person" because he was integrally involved in the decision-making regarding which creditors to pay and had significant control over the corporation's finances. Although Jones may have known that the payroll taxes were past due, his knowledge does not support the conclusion that he was a "responsible person" with the ability the pay the taxes. Accordingly, we reverse the district court's finding that Jones is liable for the payment of the payroll taxes for the first two quarters of 1980.[3]

## III.  CONCLUSION

While the payroll taxes for the first two quarters of 1980 are unpaid, Schiff and Jones cannot be required to pay them. Both are not "responsible persons" within the meaning of § 6672 because they did not exercise significant control over the corporation's financial affairs and did not have the status, duty,

---

**3.** As with Schiff, because we reverse the district court's finding of liability on the basis that Jones was not a "responsible person" within the mean-

ing of § 6672, we need not address whether Jones "willfully" failed to pay the payroll taxes.

and authority to pay the payroll taxes. We hold that the finding that Schiff and Jones were "responsible persons" is clearly erroneous and therefore reverse the district court's determination of liability for both Schiff and Jones.

REVERSED.