**Emmett F. MUNLEY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV–S–92–119–LRL.**

United States District Court,
D. Nevada.

Feb. 23, 1995.

Edward R.J. Kane, and Donald J. Bell, Las Vegas, NV, for plaintiff Emmett F. Munley.

J. Scott Moede, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for the U.S.

### ORDER

LEAVITT, United States Magistrate Judge.

This action is before the Court on plaintiff/counterclaim defendant Emmett F. Munley's Renewal of Motion for Judgment After Jury Trial, or, In the Alternative, Motion for New Trial on Issue of "Responsible Person" (# 125, filed July 8, 1994). The Court has considered the motion, Munley's Supplemental Memorandum of Points and Authorities (# 133, filed July 22, 1994), the government's Opposition (# 135, filed July 25, 1994), Munley's Reply (# 137, filed August 5, 1994),

Munley's Supplemental Memorandum of Points and Authorities Covering Recent Ninth Circuit Decisions (# 145, filed September 13, 1994), the government's Response thereto (# 147, filed September 26, 1994), and Munley's Reply (# 148, filed October 11, 1994). For the reasons that follow, the motion will be denied.

## 1. Renewal of Motion for Judgment After Jury Trial

Pursuant to Fed.R.Civ.P. 50(b),[1] Munley purports to "renew" a motion for judgment after trial on the issue of "responsible person." It is well settled that a party cannot renew a motion under Rule 50(b) for judgment after trial if he has not moved under Rule 50(a) for judgment as a matter of law at the close of all the evidence. *Farley Transportation Co. v. Santa Fe Trail Transportation Co.*, 786 F.2d 1342, 1345 (9th Cir. 1985); *Johnson v. Armored Transport of California, Inc.*, 813 F.2d 1041, 1043 (9th Cir.1987). Here, at the close of Munley's evidence the government moved pursuant to Rule 50(a) for a determination on the issue of "responsible person." Concluding as a matter of law that no reasonable jury could find that Munley was not a responsible person within the meaning of 26 U.S.C. § 6672, this Court granted the government's motion. Munley did not request a finding under Rule 50(a) that he was *not* a "responsible person."[2] Because Munley did not make a Rule 50(a) motion at trial, he cannot "renew" it now under Rule 50(b).

## 2. Motion for New Trial on Issue of "Responsible Person"

Munley seeks a new trial on the ground that the Court erred when it granted the government's Rule 50(a) motion and thereby precluded the jury from considering the "responsible person" issue. Obviously, if the jury had found that Munley were not a responsible person, Munley would have been entitled to judgment.

Munley asserts that as a matter of law he was not a "responsible person" within the meaning of § 6672. He bases his contention solely and squarely on the Management Agreement (the "Agreement") between the St. Regis Mohawk Indian Tribe (the "Tribe") and the St. Regis Mohawk Development Corporation ("SRMDC"). In Munley's view, the Agreement is a complete bar to a finding that he was a "responsible person." That is so, he contends, because the Agreement gave him neither the authority nor the duty to report bingo winnings of $1,200 or more, or to pay 20% backup withholding taxes on all such unreported bingo wins. Quite the contrary: the Agreement *prohibited* him from doing so.

The Agreement provided that in return for a loan to the Tribe to finance the construction of the bingo palace, SRMDC would obtain the right to construct, operate and manage the bingo facility. The profits generated by the bingo operation would first be used to repay the loan. Thereafter, the Tribe and SRMDC would share in the profits. In addition to running the bingo game itself, SRMDC would be responsible for accounting for all revenues generated by the bingo enterprise. The Agreement expressly required SRMDC to ensure that the bingo operation's payroll taxes were paid to the IRS. The testimony established that after the bingo

1. Rule 50(b) provides in part:

   Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.

2. Lest there be confusion on this point, the relevant procedural history is as follows: after the counterclaim defendants rested their case on day two of trial, the government moved pursuant to Rule 50(a) for judgment as a matter of law against both Munley and Duplisssey on the issues of responsible person and willfulness. The Court granted the government's motion, but only as to Munley, and only as to the issue of responsible person. The motion was denied in all other respects. The government then presented its rebuttal case. On day three, following a lengthy session in chambers settling jury instructions, Munley moved pursuant to Rule 50(a) for a determination only on the issue of willfulness. That motion was denied. Duplissey made a Rule 50(a) motion on the issues of both willfulness and responsible person. That motion was denied. Finally, the government renewed its motion under Rule 50(a) as to both Munley and Duplissey. That motion was also denied.

facility was built and the enterprise operational, Munley exercised full supervisory responsibility over the operation's management, including the power to hire and fire, signature authority on the bingo palace's checking account, and decision-making authority over what creditors to pay or not pay.

It is true that the Agreement did not expressly require SRMDC to report bingo winnings to the IRS or to backup withhold the taxes on unreported winnings. On this subject the Agreement was silent. Moreover, it is clear from the testimony that the Tribe in no way wished to assist or cooperate with the IRS in its efforts to collect taxes on bingo winnings. It is equally clear that the Tribe's directive to SRMDC and its managers was unambiguous: the management company was not to report bingo winnings or to withhold backup taxes on those winnings. From that evidence Munley concludes that although the authority the Tribe gave to Munley was admittedly far-reaching, it did not include the authority or the duty to report bingo winnings or withhold taxes on those winnings; indeed, the Tribe prohibited SRMDC and Munley from doing so. In short, Munley argues that because the Agreement neither required nor permitted the management company to report winnings or withhold taxes, he did not personally have the type of authority or duty that would qualify him as a "responsible person" within the meaning of § 6672.

Munley says that two recent decisions of the Ninth Circuit support his position: *United States v. Jones,* 33 F.3d 1137 (9th Cir. 1994) and *Alsheskie v. United States,* 31 F.3d 837 (9th Cir.1994). The Court observes preliminarily that *Jones* is of no moment here, because it held only that the district court's factual findings were not supported by the evidence *in that case.* Contrariwise, because *Alsheskie* appears at first blush analogous to this case, it merits some discussion.

In *Alsheskie,* a divided court held that the plaintiff, who ran a manufacturing company's daily operations, and who hired and fired employees, had sole signature authority over the company's only checking account, signed payroll checks and checks to creditors, and prepared accounting records—the classic indicia of a "responsible person" within the meaning of § 6672—was nevertheless not a responsible person because he didn't have the discretionary authority to pay his company's employment taxes. The court reached that conclusion because under an accounts receivable financing arrangement which the manufacturing company had with its parent company, the parent company retained substantial control over the manufacturing company's financial operations, allowing Alsheskie to use only 20% of the company's revenues for company expenditures. Those funds were used by Alsheskie to pay his employees' wages; the parent company assured Alsheskie that it would pay the employment taxes. The court stated:

> Alsheskie was an employee, not an owner during the critical period. His authority was limited not by the directions of the owners of [the manufacturing company], but by the financing arrangement. He did not have "significant control" over what bills to pay or not pay since that control remained, as the district court found, with the parent corporation. . . .

*Alsheskie v. United States,* 31 F.3d at 839.

Munley contends that the financing agreement in *Alsheskie* is analogous to the Management Agreement in this case. He argues that just as the financing agreement deprived Alsheskie of the discretionary authority to withhold and pay the employment taxes, so too the management agreement here deprived him of the discretionary authority to report bingo winnings and withhold taxes on unreported winnings. Therefore, just as Alsheskie was held not to be a responsible person, neither can Munley be held to be a responsible person.

Preliminarily, the Court observes that Munley's logic is flawed: the fact that the Agreement doesn't expressly permit Munley to report winnings or to withhold taxes does not mean it *prohibits* him from doing so. Nowhere in the Agreement is there a provision that SRMDC shall have no powers not expressly conferred by the Agreement.

Moreover, the analogy to *Alsheskie* fails in two critical respects. First, under the financing agreement in *Alsheskie,* the manu-

facturing company was expressly required to turn over all its revenues to the parent company, which released only 20% back to the manufacturing company. Alsheskie's authority to use these funds was limited basically to paying his employees' wages. He was told that the parent company would take care of the employment taxes. Clearly, as the appellate court noted, it was the parent company (which retained control over 80% of the revenues), not the manufacturing company, that had significant control over what bills to pay or not pay. This was the way the business was operated. The court found that such an arrangement precluded Alsheskie from exercising that degree of discretionary authority required of a responsible person.

The situation in this case is markedly different. Here, the Tribe played no role in the day-to-day operations of the business. The Agreement reserved to the Tribe no management or accounting responsibilities whatsoever. The Tribe disbursed none of the revenues generated by the bingo operation. The very reason the Tribe entered into the Agreement with SRMDC was that it needed someone with the experience and expertise to run the bingo enterprise.[3] Hence, the Agreement itself could not have been the source of an alleged limitation on Munley's authority or duty to report or withhold.[4]

Second, it is interesting to note that in *Alsheskie* the court observed that Alsheskie's "authority was limited not by the directions of the owners of [the manufacturing company]." *Alsheskie v. United States*, 31 F.3d at 839. The directions of the owners, without more, could not have served to relieve Alsheskie of his "responsible person" status. *Roth v. United States*, 779 F.2d 1567, 1572 (11th Cir.1986) (manager does not shed status as

otherwise responsible person merely because directed by superior not to pay withheld taxes). Here, although Munley argues that it was the Agreement that limited his authority to report and withhold, in reality it was the directions of the Tribal chiefs that caused him not to report the bingo winnings and withhold the taxes on unreported winnings. This, as Munley concedes, is not sufficient to relieve him of his authority or duty to do so.

> [O]nce having become an "otherwise responsible person" to pay over the taxes [Munley] became obligated by statute to pay these funds to the Internal Revenue Service. He was under no obligation to obey instructions from his [superiors] not to do so.

*Ibid.*

The Court recognizes that under the totality of the circumstances the result in this case may be harsh. The law, however, "is generally unsympathetic to responsible parties attempting to excuse their failure to turn over withheld tax funds to the government." *Alsheskie v. United States*, 31 F.3d at 841 (Trott, J., dissenting).

For the foregoing reasons,

IT IS ORDERED that the Renewal of Motion for Judgment After Jury Trial, or, In the Alternative, Motion for New Trial on Issue of "Responsible Person" (# 125) is denied.

---

**3.** As the Agreement states in the recitals: "WHEREAS, the Tribe needs financial support and technical experience, assistance and expertise in order to operate a tribal bingo enterprise in a business-like manner, and is desirous of employing a firm to manage and operate the tribal bingo enterprise on its behalf; and ... WHEREAS, Manager [i.e., SRMDC] has the financial means and expertise to assist the Tribe in the operation of a tribal bingo enterprise."

**4.** Indeed, ¶ 11(b) of the Agreement provides, in pertinent part:

> The Tribe agrees that in ... appointing Manager [i.e., SRMDC] as manager of the tribal bingo enterprise, it is granting the Manager all reasonable and necessary power and authority to fulfill all of Manager's responsibilities pursuant to the provisions of the Agreement and do all things consistent therewith.

As noted above, nothing in the Agreement prohibits SRMDC from reporting bingo winnings or withholding taxes on unreported winnings.