**Robert Alan JONES, Plaintiff–Counter–Claim–Defendant–Appellant,**

v.

**UNITED STATES of America, Defendant–Counter–Claimant–Plaintiff–Appellee.**

No. 93–16960.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 17, 1995.

Decided July 13, 1995.

585

Jon R. Vaught, Oakland, CA, for plaintiff-appellant.

Gary R. Allen (on the briefs), Teresa E. McLaughlin (argued), U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant-appellee.

Before: REINHARDT, THOMPSON, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

█ We reverse the summary judgment the Internal Revenue Service ("IRS") won below, because there are genuine issues of fact as to whether Mr. Jones was a "responsible person" for certain unpaid trust fund taxes, and whether assessment was timely.

## I. Facts

Mr. Jones and Mr. Russell each owned half the stock in Silver State Airlines, Inc. One served as chairman of the board, the other as president. The airline flew Asian tourists from Las Vegas to the Grand Canyon. Both men were on the bank signature cards, and they shared financial management responsibility.

In late 1981, the two men arranged for Mr. Russell to take over full control of the airline, because Mr. Russell had offered to buy out Mr. Jones's interest. Mr. Jones left, expecting to be done working at the airline. But Mr. Russell lost $200,000, and was unable to obtain an investment sufficient to consummate the transaction, so Mr. Jones came back in March. The corporation filed a Chapter 11 bankruptcy petition and Mr. Jones operated it as a debtor in possession from March 1982 until July 2, 1982.

On July 2, 1982, the bankruptcy court appointed Linda Riegle as trustee for the corporation, "to take charge of the affairs of the Debtor." She said in her deposition, "I basically, since I didn't know anything about running an airline, let Mr. Jones run it on a daily basis but instituted some checks and balances." But Mr. Jones testified in his deposition, "[Ms.] Riegle and I did not get along. She wanted, which was legally proper, complete control over the operation. She switched the bank account to bank accounts controlled by her."

This factual issue of control over the corporation's money is critical and disputed. Ms. Riegle said "I don't recall" whether Mr. Jones had access to the new accounts she opened, or whether she was the sole signatory. Later in her deposition she said "I think—at least for the month he was in there, I think he had authority to—to write checks or write checks with me as cosignatory. I just don't specifically recall but know he was still involved with the day-to-day operation of the business, because that's what caused the fights. I kept trying to work with him and he was running the day-to-day business and he just refused to listen to what I was telling him that—how he should operate the business and what he shouldn't do."

She described bill paying responsibility during the time when they were both at the airline as "I had the final authority about saying don't pay somebody. He had day-to-day authority to say this bill gets paid. I had sort of veto power is my recollection." She said that Mr. Jones had the power to see that payroll taxes were paid during that period, from July 2 to July 23, 1982. Had she been told that payroll taxes were unpaid, she would have paid them. She admitted, however, that Mr. Jones told her when she became receiver that taxes for the second quarter of 1982 had not been paid, "but I wasn't involved in June."

Mr. Jones's recollections differed. He testified that "I had no authority to sign checks. She bounced checks to my suppliers. She made a deal with a Chinese supplier in my office to pay him, gave him a check and stopped payment before he got back to San Francisco." He testified that he told her when she became receiver that there were unpaid payroll taxes, and "she agreed with me that that was the single top priority, and that they would be paid, and that she would see to it that they were." He was concerned because of the risk that he would be found liable for them as a "responsible person." He said "I flat told her," and "I told her my concern, that I didn't want the money to be used, the money from the assets and from the operations, that I was afraid she was going to dissipate them and they were weren't going to be used for things which I would ultimately be personally responsible for." After an unsuccessful attempt to have the court remove her, Mr. Jones resigned July 23, after three weeks of unsuccessful collaboration.

The government did not offer copies of the bank signature cards as evidence. A bank statement from September 1982 lists Ms. Riegle but not Mr. Jones on the account.

During the corporation's decline, it missed payments on its employee withholding taxes pursuant to 26 U.S.C. §§ 3102 and 3402, and its airline passenger excise taxes pursuant to §§ 4261 and 4291. Here are the unpaid quarters, and the amounts shown as penalties, on an undated IRS Proposed Assessment of 100 Percent Penalty Form 2751:

|  | Withholding | Excise |
| --- | --- | --- |
| 1st quarter 1981 | $11,566.37 | $3,564.81 |
| 2d quarter 1981 | $26,849.17 | $4,175.00 |
| 3d quarter 1981 | $30,208.33 | $4,845.00 |
| 4th quarter 1981 | –0– | $3,503.70 |
| 1st quarter 1982 | –0– | $3,503.70 |
| 2d quarter 1982 | $5,960.56 | $3,608.81 |
| 3d quarter 1982 | $7,213.75 | $3,717.07 |

All of the excise taxes, but not all the payroll taxes, are at issue. Mr. Jones contends that he owes no penalty for any of the excise taxes. He concedes that he was a "responsible person" for purposes of the 100% penalty under 26 U.S.C. § 6672 for all the 1981 withholding taxes. He argues that a genuine issue of fact exists as to whether he was a "responsible person" for purposes of withholding taxes for the second and third quarters of 1982. The United States abated the penalty for taxes owed after July 23, 1982, when Mr. Jones resigned.

Mr. Jones paid a sum in satisfaction of a unit of the assessment against him and filed an administrative claim for a refund. When the IRS denied the claim, Mr. Jones filed a refund suit in federal district court. The United States counterclaimed for the balance of the assessment. The district court granted the United States' motion for summary judgment and Jones appeals.

## II. Analysis

We review this grant of summary judgment de novo to determine, viewing the evidence in the light most favorable to Jones, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994).

### A. *"Responsible person," "willful."*

The "responsible person" penalty is imposed pursuant to 26 U.S.C. § 6672:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, ... shall ... be liable to a penalty equal to the total amount of the tax ... not collected, or not accounted for and paid over.

The IRS may recover a section 6672 penalty only if it shows that the individual (1) was a "responsible person" and (2) acted willfully in failing to collect or pay over withheld taxes. *Davis v. United States,* 961 F.2d 867, 869–70 (9th Cir.1992).

Mr. Jones's evidence establishes a genuine issue of fact as to his control over whether the corporation paid any of the taxes, and whether he engaged in any voluntary act to prefer other creditors to the United States, after the trustee was appointed. If the trier of fact believes his evidence, he had no control whatsoever over corporate money, and did his best to cause the person who did, trustee Riegle, to pay the taxes as of July 2.

A person is responsible for the payment of trust fund taxes for purposes of the section 6672 penalty if he had the "final word on which bills should or should not be paid." *Maggy v. United States,* 560 F.2d 1372, 1374 (9th Cir.1977). The "final word" "does not mean 'final' but instead 'the authority required to exercise *significant* control over the corporation's financial affairs, regardless of whether [the individual] exercises such control in fact.'" *United States v. Jones,* 33 F.3d 1137, 1139 (9th Cir.1994) (emphasis in original). Mr. Jones lacked such authority, under his evidence, after the trustee took over his business and its bank accounts. As in *Maggy,* once he was "stripped of all significant authority," *Maggy,* 560 F.2d at 1375, on July 2, he was not a "responsible person." In fact, Ms. Riegle stated in her deposition that she had the "final authority" and "veto power" as to who was paid.

Willfulness as used in section 6672 is the "voluntary, conscious and intentional act

to prefer other creditors over the United States." *Davis,* 961 F.2d at 871. Mr. Jones's evidence was that he did his best to have the trustee prefer the United States to other creditors because he wanted to avoid "responsible person" liability. The trustee acknowledged that "[t]here may have been a conversation with taxes for ending June. But I wasn't involved in June." Viewing the evidence in the light most favorable to Mr. Jones, by the time some or all of the unpaid second quarter taxes became due, Mr. Jones had done his best to cause Ms. Riegle to pay them, and she, not he, decided to prefer other creditors to the United States, because she "wasn't involved in June."

The IRS argues that because the second quarter taxes accrued while Mr. Jones still had a position of authority, he was a "responsible person." Withholding taxes accrue when the employees are paid. An employer paying wages "shall deduct and withhold" the payroll taxes, 26 U.S.C. § 3402(a). The withheld taxes, however, are not payable to the government at the time they are withheld. They are paid subsequently. The return, Form 941, need not be filed until "on or before the last day of the first calendar month following the period for which it is made." 26 CFR § 31.6071(a)–1. "The tax required to be reported on each tax return ... is due and payable ... at the time prescribed in § 31.6071(a)–1 for filing such return." 26 CFR § 31.6151–1. However, deposits must be made periodically throughout the quarter in federal depositories, at intervals which depend on the amounts withheld. 26 CFR § 31.6302(c)–1.

For Mr. Jones, this means that the taxes accrued while he was still a responsible person, but the company's deadline for paying at least some and possibly all of the withheld money to the government came subsequent to July 2, when he was no longer a "responsible person." It is impossible to tell from the record what portion of the second quarter taxes should have been deposited on or before the receivership removed Mr. Jones from his "responsible person" position. This depends on when employees were paid, and how much was withheld. Some portion has to have become payable after the receiver took control. Because at least some of the taxes accrued during the second quarter of 1982 were not payable until some time in July after the trustee took control of company money, and any taxes on payroll disbursed after July 2 became due and also became payable after Mr. Jones lost control to the trustee, he argues that he was not a "responsible person" for purposes of the 100% penalty for those taxes.

Mr. Jones's argument appeals strongly to fairness. If he collected the taxes as required, and did his best to cause them to be accounted for and paid over to the government when the time for that arrived in the ordinary course, yet the receiver chose to reject his entreaties and prefer other creditors, it does not seem fair to penalize Mr. Jones.

■ We are prevented, however, by clear precedent, from adopting his position. In *Teel v. United States,* 529 F.2d 903, 906 (9th Cir.1976), we held that where a receiver is appointed after the taxes accrue but before they become payable, the person responsible prior to the receiver's appointment is liable for the penalty. We held in that case that liability for the tax "attached to the [responsible persons] at the time they withheld the tax." *Id.* Likewise, we held in *Davis v. United States,* 961 F.2d 867, 873 (9th Cir. 1992), that "liability as a responsible person attaches each time salaries are paid during the course of a quarter." *See Slodov v. United States,* 436 U.S. 238, 247–48, 98 S.Ct. 1778, 1785–86, 56 L.Ed.2d 251 (1978). Jones was a responsible person "at the time the taxes were withheld and the salaries disbursed" during the entirety of the second quarter (April, May, and June 1982). *Davis,* 961 F.2d at 873. During that time period, no trustee had been appointed, so Mr. Jones's issue of fact regarding his control when the taxes became payable is not material, under the *Teel* line of authority. "Responsible person" status is determined, under these authorities, when the employees are paid, not when the withheld taxes should have been deposited or became payable.

There is, however, a genuine issue of material fact regarding the payroll taxes for the third quarter of 1982. The record does not

establish whether anyone was paid in July prior to the receiver's takeover on July 2. Mr. Jones testified that when the trustee was appointed, she "switched the bank accounts to bank accounts controlled by her" and that he had no authority to sign checks. He stated with certainty that at the time the trustee was appointed, he told her she should pay the withholding taxes. He testified that she refused to follow his advice on paying creditors, and that this was a major factor in causing him to resign in three weeks. That is enough to establish a genuine issue of material fact as to whether he had "significant control" *United States v. Jones,* 33 F.3d 1137, 1139 (9th Cir.1994), over who was paid July 2 and thereafter. *See also Alsheskie v. United States,* 31 F.3d 837, 839 (9th Cir. 1994). A person who does all he can to cause taxes to be paid, and whose efforts are rejected by those with more control, is not a "responsible person."

Thus, the district court did not err in holding that Mr. Jones was a "responsible person" for all payroll up to July 2. For payroll on or after July 2, Mr. Jones established a genuine issue of material fact, so summary judgment was erroneous for taxes accruing during the receivership. This reasoning applies to the excise taxes as well as the withholding taxes.

Mr. Jones makes two meritless arguments for why he was not a "responsible person" for excise taxes during the fourth quarter of 1981 and the first quarter of 1982. He says he was gone then, because of the anticipated sale of the business to Mr. Russell. But he offered no evidence that he lacked significant control, only that he failed to exercise it. "That an individual's day-to-day function in a given enterprise is unconnected to financial decision making or tax matters is irrelevant where the individual has the authority to pay or order the payment of delinquent taxes." *Purcell v. United States,* 1 F.3d 932, 937 (9th Cir.1993).

■ Mr. Jones also argues that he did not know that he had to pay excise taxes on flights that were purchased in Japan. The United States charged an 8% excise tax on travel which began or ended in the United States, regardless of where the tickets were sold. 26 U.S.C. §§ 4261, 4262. "A mistaken belief on the part of the responsible person that the tax need not or cannot be paid over does not suffice to render the failure to pay nonwillful." *Teel v. United States,* 529 F.2d 903, 906 (9th Cir.1976).

## B. *Assessment of Penalty*

■ Mr. Jones also argues that he established a genuine issue of fact as to whether he was assessed a penalty for any of the taxes at issue within the time period allowed by statute to the IRS. He is correct.

In an action to collect a tax, the government bears the initial burden of proof. *Oliver v. United States,* 921 F.2d 916, 919 (9th Cir.1990). The assessment of tax ordinarily establishes the government's prima facie case, so it becomes incumbent on the taxpayer to establish an issue of fact. *Id.*

■ With exceptions not at issue in the case at bar, the government must assess taxes within three years after the return is filed. 26 U.S.C. § 6501(a) ("the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed."). That would give the government until 1984 and 1985 to assess additional taxes for the 1981 and 1982 period at issue. The government argues that only the taxpayer who files the return, in this case the corporation, gets the benefit of the three year statute of limitations, not a "responsible person" who subsequently is required to pay because the corporation failed to pay. The government's position is that it can collect from a "responsible person" "at any time," without regard to any statute of limitations. We agree with the Fifth Circuit, that "[t]he assessment itself must be made within three years of the filing of the return giving rise to the [responsible person] liability." *Stallard v. United States,* 12 F.3d 489, 493 (5th Cir. 1994). *See also Purcell v. United States,* 1 F.3d 932, 941–42 (9th Cir.1993); *Howard v. United States,* 868 F.Supp. 1197, 1200 (N.D.Cal.1994).

In the case at bar, the government introduced three items of evidence regarding the assessment: (1) a July 27, 1990 certificate of official record certifying a Form 23–C summary record of assessment dated November

19, 1984; (2) a July 26, 1990 certificate of official record certifying a Form 4340 certificate of assessments and payments for Mr. Jones for the third quarter of 1982, also dated July 26, 1990; (3) an undated form 2751, "Proposed Assessment of 100 Percent Penalty" to Mr. Jones, listing the penalties for all the 1981 and 1982 quarters. No affidavits were introduced to show when the 4340 or 2751 were prepared.

Mr. Jones argues that the details of these documents themselves establish a genuine issue of fact as to whether the assessment was made prior to 1990. He is right. The 23–C says on its face that it was made November 19, 1984 and is signed on that date, which would be timely, but it does not identify any party as having been assessed. It recites that the assessments "are specified in supporting records," but those records were not offered as evidence. There was no evidence to show that the 4340 or 2751 were the supporting records referred to in the 23–C, and some evidence to show the contrary, that they were prepared in 1990. One was undated, and the other said on its face that it was prepared in 1990.

None of the amounts for taxes or penalties on the 23–C prepared in 1984 match any of the assessments now claimed against Mr. Jones. Evidently multiple taxpayers' taxes and penalties are accumulated in the totals on the 23–C. No penalties for excise taxes are shown on the current portion of the form, and no penalties for withholding taxes are shown on the deficiency portion of the form. There is no separate category for penalties standing alone. On its face, the form is inconsistent with the claim now made by the government against Mr. Jones for Section 6672 penalties encompassing both unpaid excise and unpaid withholding taxes.

If there were some way to reconcile what the form says with what the government claims, it was incumbent on the government to submit evidence so demonstrating. The Form 4340 says on its second page that it was prepared in 1990, so it cannot be the "supporting record[ ]" referred to in the 1984 Form 23–C. It appears to be an analysis prepared by the government during litigation. Likewise the undated Proposed Assessment of 100 Percent Penalty, Form 2751, shows no indication of when it was prepared.

The evidence supports the inference that no assessment was made until 1990 for the amounts now claimed against Mr. Jones. So late an assessment would be too late under the statute of limitations.

Thus, Mr. Jones has established a genuine issue of fact as to whether the amounts now claimed by the IRS were assessed within the statute of limitations period. "Official certificates, such as Form 4340, can constitute proof of the fact that the assessments were actually made." *Hughes v. United States,* 953 F.2d 531, 535 (9th Cir.1992). *See also United States v. Zolla,* 724 F.2d 808, 810 (9th Cir.1984). Where the official certificates do not support the proposition which must be proved, however, and lend themselves to an inference that the proposition is false, then the existence of official certificates does not suffice for summary judgment. One must read the official documents to see what they say. It is insufficient merely that they exist. The issue of fact arises not only because the form 4340 was prepared after the three years limitation period had expired. *Cf. Stallard v. United States,* 12 F.3d 489, 493 (5th Cir. 1994); *Stallard v. United States,* 806 F.Supp. 152, 158–59 (W.D.Texas 1992). In addition to the lateness of the date of assessment, the numbers on the Form 23–C did not match up with the amounts assessed. A notice of assessment prepared many years after the taxes allegedly became due, where there is evidence that the amounts were not assessed within the three year statute of limitations, is insufficient for summary judgment. The dates and the discrepancies establish a genuine issue of fact which rebuts the presumption of timely assessment.

The presumption in favor of the IRS was rebutted, as to the timeliness of assessment. The summary judgment is reversed, because there was a genuine issue of fact as to whether the assessment was timely, and if it was, whether Mr. Jones was a "responsible person" who "willfully" failed to pay over at least some of the taxes which became due after the receiver was appointed.

REVERSED and REMANDED.