**In re Victor K. PUGH, Debtor.**

**No. BK–N–03–52320.**

United States Bankruptcy Court, D. Nevada.

June 25, 2004.

lien. See, 11 U.S.C. § 101(36); (37).

Rodney E. Sumpter, Reno, NV, for debtor.

Anton L. Janik, Jr., Department of Justice, for U.S.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

### Background

Chapter 13 Debtor Victor Pugh ("Debtor") objects to the proof of claim filed in his bankruptcy case by the United States Internal Revenue Service ("IRS"). The proof of claim asserts a right to collect, in part, unpaid taxes, interest and penalties based upon Debtor's failure to pay over taxes withheld from employee wages during portions of 1992 and 1993 while he was serving as an officer of Rand Construction Management and Consulting Company ("Rand Construction"). Obj., Docket No. 12. The IRS relies upon 26 U.S.C. § 6672, which allows it to assess a penalty in an amount equal to the total amount of the unpaid tax against a "responsible patty" that "wilfully" failed to pay over the withheld employee taxes.[1] Debtor argues that the amount of the tax due under § 6672 in the IRS's proof of claim is incorrect; that Debtor was not a "responsible party;" and that he did not "willfully" fail to pay over the taxes.

On April 14, 2004, the IRS filed a motion for summary judgment. Docket No. 20. The Court conducted a hearing on that motion, at which the parties appeared and argued their respective positions, on May 26, 2004. After careful consideration of

---

1. The IRS's proof of claim includes amounts owing for the § 6672 penalty, plus additional penalties and interest totaling approximately $25,000, as well as unpaid income taxes plus penalties and interest for 1996, 1998, 2000, 2001, and 2002 that total approximately $16,000. Proof of Claim No. 11. While Debtor initially objected to both components of the IRS's claim, once Debtor filed his personal income tax returns for those years and the IRS amended its claim, he did not further contest that portion of the IRS's claim.

the record and the parties' arguments, for the reasons that follow, the Court concludes the IRS's motion should be granted in part, and denied in part.

### Facts

Except where noted, the following facts do not appear to be in dispute.

Gary Rand founded Rand Construction in 1991. Janik Decl., Ex. B., Docket No. 21. The company apparently provided general contracting services. *Id.* at Ex. A. Initially, Mr. Rand and Debtor were the officers, directors, and shareholders. *Id.* at Ex. D. Victor Pugh Aff. at ¶ 2–4; Opp., Ex. 8, Gary Rand Depo. at 46–48, Docket No. 22. In September, 1993, the corporate officers changed. Mr. Rand continued as President, Debtor became the Vice President, and Mrs. Pugh became the Treasurer, a position previously held by Debtor. Opp., Ex. 8, Gary Rand Depo. at 217, lines 2–13, Docket No. 22; Janik Decl., Ex. B., Docket No. 21.

The officers were each responsible for different aspects of the company's business. Debtor worked primarily in the field, managing the construction projects. Janik Decl., Ex. G, Victor Pugh Depo. at 39, Docket No. 21; Opp., Ex. 8, Gary Rand Depo. at 49, lines 23–25, Docket No. 22. To facilitate construction, Debtor sought and accepted bids from subcontractors and contracted with them on behalf of the corporation. Janik Decl., Ex. G, Victor Pugh Depo. at 89–90, Docket No. 21. Debtor made roughly ninety percent of the decisions as to subcontractors; he also super-vised Rand Construction's employees working in the field. *Id.* at 44.

Mr. Rand managed the financial aspects of the company's operations, as well as land acquisition. *Id.* at 41, lines 23–25; Ex. H, Victoria Pugh Depo. at 27, lines 1–4, Docket No. 21; Opp., Ex. 8, Gary Rand Depo. at 236, lines 3–7, Docket No. 22. Debtor considered Mr. Rand to be his "boss," while Mrs. Pugh reported to both Debtor and Mr. Rand. Janik Decl., Ex. G, Victor Pugh Depo. at 41, line 23; Ex. H, Victoria Pugh Depo. at 53, lines 1–4, Docket No. 21.

Mrs. Pugh was primarily responsible for all the company's bookkeeping, and she consulted with both Mr. Rand and Debtor to assist her in that task. Before she paid invoices from subcontractors, she would consult Mr. Rand to make sure the invoice was correct, and once approved, she would issue a company check to pay the invoice. Janik Decl., Ex. H, Victoria Pugh Depo. at 38–39, Docket No. 21. If Mr. Rand was unavailable, which occurred roughly twenty-five percent of the time, she consulted Debtor to review the invoice. *Id.* at 39.

To manage cash flow, Mrs. Pugh prepared spreadsheets on a monthly basis showing the accounts payable, accounts receivable, and job progress. *Id.* at 50–51. The spreadsheets also reflected whether particular bills had been paid or not, as well as the bank deposits made for the month. Opp., Ex. 10, Victoria Pugh Aff. at ¶ 5, Docket No. 22.[2] To accurately note job progress on the spreadsheets, she consulted with Debtor before giving the spreadsheets to Mr. Rand to review. *Id.*

---

**2.** The IRS objected to the Court's consideration of Mrs. Pugh's affidavit because, it believes, her affidavit conflicts with her earlier deposition. Reply at 12, Docket No. 24. The Court overrules the IRS's objection. *See Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266–67 (9th Cir.1991) (holding that before a court may exclude an affidavit that may con-flict with prior deposition testimony, it must make a factual determination that the contradiction was actually a sham). *See also Leslie v. Grupo ICA,* 198 F.3d 1152, 1157–58 (9th Cir.1999) (deciding that a later affidavit was not a sham because it sought to explain prior statements made in a deposition).

The company began experiencing financial difficulties in 1993. Because of its financial difficulties, the officers had to choose which bills to pay. Janik Decl., Ex. F., Gary Rand Depo. at 157, lines 1–10, Docket No. 21. Notwithstanding their respective management responsibilities, both Debtor and Mr. Rand had the ability to approve payment of selected bills, despite the fact that other bills may also have been due. Id. at Ex. H, Victoria Pugh Depo. at 41, lines 4–10. See also Janik Decl., Ex. N. In addition, Debtor signed corporate checks and payroll checks, had access to the corporate computer files, and had the ability to sign any check for any reason, although he usually discussed a bill with Mr. Rand before paying it. Id. at Ex. G, Victor Pugh Depo. at 30–31; 32; 132, lines 12–16; and 135, lines 1–11. Certain check stubs, which were handwritten, show that employees, vendors, and subcontractors were paid during 1993, and that employee withholding taxes[3] were computed and withheld from wages. See Opp., Ex. 8, Gary Rand Depo. at 234–40, Docket No. 22; Janik Decl., Ex. Q, Docket No. 21. Despite the company's financial problems, its corporate checking account records from May, 1993 through February, 1994 show a positive ending balance each month. Janik Decl., Ex. P.

While it withheld taxes from employee wages, the company failed to pay them over to the IRS as they became due for the first three quarters of 1993. Id. at Ex. H, Victoria Pugh Depo. at 51–52; Opp., Ex. 10, Victoria Pugh Aff. at ¶ 5, Docket No. 22. Each time Mrs. Pugh discussed the bills that needed to be paid with Mr. Rand, she mentioned the unpaid payroll taxes. Janik Decl., Ex. H, Victoria Pugh

Depo. at 27. She also believes that during 1993, she spoke to Debtor about the company's accounts payable, including the past due taxes for the first two quarters of 1993, "maybe six to ten times ... [a]fter the first set of taxes would have been due, ... meaning from January until the end of March, after that point[.]" Id. at 28–29. Debtor did not recall having any discussions with Mrs. Pugh about the company's ability to pay the withholding taxes, but stated that even though he could not remember, it did not mean those conversations did not occur. Id. at Ex. G, Victor Pugh Depo. at 38, 53, 58.

The unpaid tax liabilities for the first three quarters of 1993 were also reflected in the spreadsheets Mrs. Pugh prepared at the time for Mr. Rand and Debtor. Id. at Ex. H, Victoria Pugh Depo. at 50–51; Opp., Ex. 10, Victoria Pugh Aff. at 2, Docket No. 22. Although in her deposition she testified that Debtor saw the spreadsheets reflecting the unpaid tax liabilities for the first three quarters of 1993, see Janik Decl., Ex. H, Victoria Pugh Depo. at 50–51, Mrs. Pugh explained in a subsequent affidavit that Debtor was not shown the spreadsheets for purposes of discussing accounts payable, which included the past due taxes, and that she did not think Debtor really understood what he was being shown. Opp., Ex. 10, Victoria Pugh Aff. at ¶ 5, Docket No. 22.

Beginning in November, 1993, Debtor and Mr. Rand disagreed about how to operate the company. Mr. Rand proposed to divide the company's assets between them. Before a dissolution agreement was reached, however, on January 11, 1994, Mr. Rand removed all of the books, rec-

---

**3.** These taxes include deductions from employee wages plus matching company contributions for social security and medicare taxes (sometimes called "FICA" taxes), see 26 U.S.C. §§ 3101–3128, income taxes withheld from employee wages, see 26 U.S.C. §§ 3401–3510, and federal unemployment taxes (sometimes referred to as "FUTA" taxes), collected from an employer under 26 U.S.C. §§ 3301–3311.

ords, and company assets from the corporate office and took steps to effectively exclude Debtor from further operations of the corporation. Janik Decl., Ex. D, Aff. of Victor Pugh at ¶ ¶ 5–8, Docket No. 21. Mr. Rand took these steps without Debtor's or Mrs. Pugh's knowledge and outside their presence. Opp., Ex. 8, Gary Rand Depo. at 244–45, Docket No. 22. On January 12, 1994, Mr. Rand executed and submitted a revised corporate checking account signature card to the bank, which revoked Debtor's signature authority. *Id.* at Ex. 7 (bank signature card); Ex. 8, Gary Rand Depo. at 245, lines 11–14.

Although Debtor no longer had any control over the operations of the company, a formal agreement for Mr. Rand to buy his interest in the corporation was not finalized until July 1, 1994. In connection with this transaction, Mr. Rand disclosed to Debtor that the IRS may hold a claim against the company for unpaid withholding taxes from 1992 and 1993. Janik Decl., Ex. E, Stock Purchase Agreement at 6–7, Docket No. 21. Mr. Rand agreed to indemnify Debtor from any and all liability for such a claim. *Id.*; Ex. T, Indemnification Agreement. Unfortunately, after the split, the company's tax obligations went unpaid.

Ultimately, the IRS sought to collect the company's unpaid employment taxes for the second quarter of 1992 and the fourth quarter of 1993 from Mr. Rand. After interviewing him, the IRS determined that, even though Mr. Rand should be personally responsible for these taxes, because of his financial circumstances the IRS claim

was uncollectible from him. *Id.* at Ex. S. The IRS then assessed the taxes against Debtor as a responsible person liable to pay the taxes on behalf of the corporation. *Id.* at Exs. I, J, L.[4]

Debtor filed for relief under Chapter 13 of the Bankruptcy Code on July 10, 2003.[5] Docket No. 1. The IRS timely filed its proof of claim, which has been amended several times. The seventh amended proof of claim, at issue here, asserts that Debtor owes $14,674.63 in taxes assessed as a penalty under 26 U.S.C. § 6672, interest in the amount of $9,802.56, plus an additional penalty.[6] Proof of Claim No. 11. Debtor objected to the IRS's claim on October 10, 2003. Docket No. 12.

## Disposition

### A. Summary Judgment Standard.

Summary judgment may be granted if, when the evidence is viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c) (incorporated by Fed. R. Bankr.P. 7056); *Far Out Prods. v. Oskar,* 247 F.3d 986, 992 (9th Cir.2001).

The Court does not weigh the evidence in considering summary judgment. Rather, it determines only whether a dispute concerning a material fact remains for trial. *Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir.1997). A fact issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find in favor of the non-moving

---

4. Although Mrs. Pugh was a corporate officer beginning in September, 1993, the IRS never sought to assess the taxes against her as a "responsible person," and neither party argued that she was one.

5. Debtor had filed a Chapter 7 bankruptcy case on August 4, 1998, but it was dismissed

and closed on April 13, 2000. *See* Case No. 98–32185.

6. Of the $874.30 in additional penalties assessed, it is not clear what portion is attributable to the taxes assessed under § 6672 versus personal income taxes. Proof of Claim No. 11.

party; a fact is "material" if it might affect the outcome of the case. *Far Out Prods.*, 247 F.3d at 992 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The initial burden to demonstrate there is no genuine issue of fact rests on the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (*en banc*); *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998). The party opposing the motion may not rest on the pleadings but through its own evidence "set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods.*, 247 F.3d at 997 (quoting Fed.R.Civ.P. 56(e)). The non-moving party is required to "identify with reasonable particularity the evidence which precludes summary judgment." *Id.* (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996)).

Moreover, if the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Devereaux*, 263 F.3d at 1076. The failure to sustain this burden as to any required element of a cause of action is fatal to that cause, even if issues are shown to exist as to other elements. A complete failure on one element necessarily renders the other elements "immaterial," whether factually disputed or not. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

■ In the context of claims litigation, Debtor, as the objector in this case, has the burden of presenting evidence sufficient to overcome the *prima facie* validity of the IRS's claim. *In re Pugh*, 157 B.R. 898, 901 (9th Cir. BAP 1993). Federal law is applicable in this instance. *See Oiltech,*

*Inc. v. Nelson & Harding (In re Oiltech, Inc.)*, 38 B.R. 484, 485 (Bankr.D.Nev.1984).

## B. Liability Under 26 U.S.C. § 6672.

The Ninth Circuit has explained the statutory framework for establishing a *prima facie* case for "responsible person" liability under 26 U.S.C. § 6672.

The Internal Revenue Code requires employers to withhold federal income and social security taxes from the wages of their employees. 26 U.S.C. § 3402. The amounts withheld constitute a special fund held in trust for the benefit of the United States and are paid over quarterly. 26 U.S.C. § 7501(a). Under IRC § 6672, the IRS may assess a 100% penalty on responsible persons who willfully fail to collect, account for, and pay over the taxes to the United States. A "person" includes "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

For the United States to assess the 100% penalty under § 6672, two requirements must be met: (1) "the party assessed was a 'responsible person' *i.e.* one required to collect, truthfully account for and pay over the tax," and (2) "willfully refused to pay the tax." *Teel v. United States* 529 F.2d 903, 905 (9th Cir.1976). Introducing Certificates of Assessments and Payments establishes a *prima facie* case for the United States. *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir.1990). "The individual against whom the assessment is made bears the burden of proving by a preponderance of the evidence that one or both of [the elements of responsibility and willfulness] is not present." *Hochstein v.*

*United States* 900 F.2d 543, 547 (2d Cir.1990).

*United States v. Jones* 33 F.3d 1137, 1139 (9th Cir.1994).

### 1. Debtor is a "responsible person" as a matter of law.

 Responsibility is a "matter of status, duty, and authority." *Purcell v. United States* 1 F.3d 932, 937 (9th Cir. 1993) (quoting *Davis v. United States* 961 F.2d 867, 873 (9th Cir.1992)). Even if an individual's daily functions in the corporation are unconnected to financial decision-making or tax matters, if that person is authorized to pay, or to order the payment of, the delinquent taxes, he or she is a responsible person for purposes of the tax laws. *Id.* Delegation of one's duties also does not relieve one of liability. *Id.*

 The factors the Court should consider in determining whether an individual qualifies as a responsible person include "the individual's duties as outlined in the corporate bylaws, his ability to sign checks, his status as an officer or director, and whether he could hire and fire employees.... The most critical factor [is] having 'significant control over the enterprise's finances.'" *Jones* 33 F.3d at 1140 (quoting *Hochstein* 900 F.2d at 547, and adopting the factor test).

 Debtor had the requisite status, duty and authority, during both the second quarter of 1992 and the fourth quarter of 1993, to qualify as a responsible person under 26 U.S.C. § 6672. From the incorporation of Rand Construction in 1991 through then middle of January, 1994, Debtor had served as a corporate officer, shareholder, and director. He held and exercised significant authority over contracting with subcontractors, and he supervised the company's employees on construction sites. By binding the company to contracts for services and materials, his

decisions substantially impacted, and he thus controlled, the corporation's finances. Even though Debtor routinely discussed employment matters with Mr. Rand and considered him to be the final decision-maker in that regard, Debtor significantly participated in and influenced the employee hiring process.

Debtor also had access to the corporate checking account at all times, and, at least twenty-five percent of the time, he alone authorized the payment of particular vendors and subcontractors. Also, by signing payroll checks, he authorized the payment of employees. All these activities show that Debtor held and exercised the requisite authority over the company's finances to direct the payment of delinquent withholding taxes, even if he felt that Mr. Rand was ultimately responsible for them.

 Debtor disputes his liability for 1993's fourth-quarter taxes because he was ousted by Mr. Rand from any participation in company operations in January, 1994. The Court concurs that, although Debtor did not formally resign from the company until July 1, 1994, his status as a responsible person for tax purposes ended on January 12, 1994, the date that Mr. Rand effectively removed him from power. In *Maggy v. United States* 560 F.2d 1372, 1375 (9th Cir.1977), the Court held, under facts similar to those here, that once a responsible person is stripped of all corporate authority, he or she can no longer be considered a responsible person even though that person continues to work for the corporation. Under *Maggy*, despite retaining his corporate title until his official resignation on July 1, 1994, once Debtor was effectively stripped of all significant authority over company affairs, he could no longer be considered a responsible person as a matter of law.

Nevertheless, Debtor was a responsible person until he was ousted from office in mid-January, 1994. Therefore, he cannot escape liability for the taxes withheld from wages, but unpaid, for October, November, and December of 1993. "[L]iability as a responsible person attaches each time salaries are paid during the course of a quarter. 'As the employer withholds taxes from the employees, a contingent liability is created. The liability merely becomes fixed on the date when the payments are due.'" *Davis* 961 F.2d at 873 (quoting *Teel* 529 F.2d at 906).[7]

In summary, based upon the undisputed facts, Debtor was a "responsible person" as a matter of law. The IRS is entitled to summary judgment on this issue.

## 2. An issue of material fact exists concerning the willfulness of Debtor's failure to pay the taxes.

The second requirement for finding liability requires that the responsible person "willfully refused" to pay the tax. This is a factual question and, "if sufficiently controverted, would preclude the granting of summary judgment on penalty liability." *Teel* 529 F.2d at 905 (citing *Kalb v. United States* 505 F.2d 506, 511 (2d Cir.1974)). To prove willfulness, the IRS must show that Debtor had knowledge of payments to other creditors after he was aware that the withholding taxes were delinquent, and committed a "voluntary, conscious and intentional act to prefer other creditors over the United States. No bad motive need be proved, and conduct motivated by reasonable cause, such as meeting the payroll, may be 'willful.'" *Phillips v. IRS*, 73 F.3d 939, 942 (9th Cir.1996) (internal citations omitted). *See also Buffalow v. United States* 109 F.3d 570, 573 (9th Cir.1997) (following *Phillips*); *In re FitzGerald*, No. BK-S-88–1829–LBR, 1992 WL 472717, at *4 (Bankr.D.Nev. July 15, 1992) (setting forth willfulness requirements). The government needs to prove more than mere negligence, but less than actual knowledge. *Phillips* 73 F.3d at 942. A "reckless disregard" of whether the taxes are being paid over is sufficient. *Id. See also Teel* 529 F.2d at 905 ("if the appellants could prove non-reckless ignorance of the failure to pay over, until the date of receivership, then no penalty under 26 U.S.C. § 6672 could attach.").

With respect to both 1992's second-quarter taxes and 1993's fourth-quarter taxes, a genuine issue of material fact exists concerning whether Debtor knew

---

**7.** Although neither party has directly focused upon the timing of tax payments, Debtor seems to argue that Mr. Rand's takeover of the corporation on January 12, 1994, absolved Debtor from liability for 1993's fourth-quarter taxes. However, depending upon the amounts withheld, employers may be required to make tax deposits either monthly or semi-weekly, even though the Form 941 for the fourth quarter of 1993 was not due until the end of January, 1994. 26 C.F.R. § 31.6302–1(a), (c); 26 C.F.R. § 601.401; *Jones v. United States* 60 F.3d 584, 588 (9th Cir.1995). As in *Jones*, this could mean that the taxes accrued while Debtor was a responsible person, but that the company's deadline for paying at least some of the taxes with-held during December, 1993, was subsequent to January 12, 1994, after Debtor was no longer a "responsible person." In *Jones*, the court rejected a similar argument that an individual was no longer a responsible person for the taxes because he had been removed from authority before some of the accrued taxes became due. *Jones* 60 F.3d at 588. Instead, the court held that a responsible person's liability for the taxes attaches at the time of withholding, not at the time the taxes become payable. *Id.* As a result, Debtor is liable for all the taxes withheld from wages during the fourth quarter of 1993, and the termination of his status as a "responsible person" before some of the taxes may have become payable is immaterial.

before January 12, 1994, that those with-holding taxes had not been paid.

First, with respect to the 1992 second-quarter withholding taxes, there is no evidence in the record at all that Debtor knew they were unpaid. Mrs. Pugh, the bookkeeper for the corporation, stated that she spoke to her husband specifically about unpaid withholding taxes for the first and second quarters of 1993. She noted on the monthly spreadsheets she prepared that 1993's first, second, and third-quarter taxes had not been paid at the time she prepared the spreadsheets. Debtor, although he does not recall specifics, reviewed these spreadsheets at the time. However, it is clear that these spreadsheets would have contained no information concerning unpaid taxes from as far back as the second quarter of 1992. No evidence was submitted to show that Mrs. Pugh prepared similar spreadsheets during 1992, or that she otherwise spoke to Debtor about any unpaid tax liability from the second quarter of 1992, at any time thereafter.

With respect to 1993's fourth-quarter taxes, the evidence could support an inference that Debtor also did not know of their unpaid status. First, because of the Pughs' departure from the corporation in January, 1994, Mrs. Pugh stated that, although the last quarter's taxes would have been due, she would not necessarily have reviewed that information with Debtor because her spreadsheets, where she would have noted the unpaid taxes, would have been generated after she had left. Janik Decl., Ex. H, Victoria Pugh Depo. at 52, Docket No. 21. And her statement that she talked to her husband about tax issues "[m]aybe six to ten times, ... which included those taxes," after April, 1993, (Janik Decl., Ex. H, Victoria Pugh Depo. at 28) is subject to conflicting interpretations. Mrs. Pugh never specifically indi-

cated that she spoke to her husband about 1993's fourth-quarter taxes as they became due, only that she spoke to him about 1993's first-quarter taxes, because those were already past due. *See* Janik Decl., Ex. H, Victoria Pugh Depo. at 28–29, 51–52, Docket No. 21.

■ Instead, the IRS argues that once a responsible person acquires knowledge of a payroll tax liability, he or she is liable for unpaid taxes for all periods during which that individual was a responsible person, regardless of whether those periods precede or follow the date the person first gained that knowledge. In this fashion, the IRS insists Debtor's knowledge of the unpaid taxes from the first three quarters of 1993 is sufficient to render him liable for the unpaid taxes from 1992 and for 1993's fourth-quarter tax liabilities. For support, the IRS cites *Davis* 961 F.2d at 873, as well as *Clary v. United States* No. 3:94CV226–MCK, 1996 WL 167870, at *18–19 (W.D.N.C. Feb.9, 1996). The Court respectfully disagrees with the IRS's approach in this case.

Not only does the IRS's theory presume material facts that the Court has identified above as remaining the subject of a genuine dispute, precluding summary judgment in its favor, it is not at all clear that either of the cases cited by the IRS support its sweeping proposition. In *Davis*, the corporation's president learned in July, 1982, that the taxes withheld from employee wages had not been paid for the preceding three consecutive quarters, at which time the payments were all past due. The president then made a deliberate decision to use corporate revenues received after July, 1982 to pay other creditors rather than the government, which the court held fell within the literal terms of the Ninth Circuit's definition of "willfulness." *Davis* 961 F.2d at 871. The court explained that it was Davis's "status and authority

throughout the quarters, not his state of mind," which made him responsible, and it was his "actions after he learned of the tax debt" that constituted willfulness. *Id.* at 876.

In *Clary*, the corporate president learned of his corporation's tax liability in February, 1992, after the company had failed to pay taxes withheld from employee wages for the preceding nine consecutive quarters. Clary argued that because he did not learn of the tax liability until February, 1992, he could not have willfully failed to pay the accrued taxes from the earlier quarters. The court held otherwise, explaining that once he learned of the delinquency, he was under a duty to apply any unencumbered corporate funds to pay the tax liability for the delinquent quarters as well as any subsequent quarters, and that because he failed to do so, his actions in not paying the taxes after learning of them was willful. *Clary* at *18–19.

Even if Debtor knew that Rand Construction was delinquent in paying its taxes for the first three quarters of 1993, neither *Davis* nor *Clary* endorse the theory that his knowledge of those unpaid liabilities is sufficient to charge him with knowledge of other unpaid tax liabilities, either in the past or in the future as the taxes became due. In both *Clary* and *Davis*, the tax liabilities were all from the most recent, and consecutive, preceding quarters, with no substantial gap in between the accrual of liability. Here, there was a gap of some nine months between the unpaid liabilities from 1992, and the next time the tax liabilities went unpaid in 1993. The IRS's naked assertion that Debtor signed a check payable to the IRS for $39.46 on September 22, 1992, and that

the IRS applied it to a part of the unpaid tax liabilities from the second quarter of 1992, without more, does not establish the requisite knowledge. *See* Reply at 10, Docket No. 24; Janik Decl., Ex. N, Bates No. 0127, Docket No. 21.[8]

Second, in *Clary* and *Davis*, it was the corporate presidents' actions once they learned of the unpaid liabilities that caused the nonpayment to be willful as a matter of law. Their deliberate, although not ill-intentioned, decisions to pay other creditors from corporate revenues after they learned of the delinquent taxes, together with their decision to allow future taxes to go unpaid as they became due, constituted willfulness as a matter of law. In *Clary* and *Davis*, the corporate officers paid none of the taxes after learning of their delinquent status, even though the corporation had money with which to pay them. In this case, despite the company's delinquent tax status for the first three quarters of 1993, those taxes ultimately were paid. Although neither party offered any evidence concerning the circumstances of the payments, the IRS has not asserted a claim in this bankruptcy nor presented any evidence that it assessed Debtor under 26 U.S.C. § 6672 for the failure to pay taxes due for those periods. As a result, the Court cannot conclude as a matter of law that Debtor was preferring other creditors over the IRS, because corporate revenues were eventually applied to the delinquent taxes for the first three quarters of 1993. That fact suggests that Debtor would have directed either the 1992 or fourth-quarter 1993 tax liability to be paid had he known of their status, given that the overdue taxes for the first three quarters of 1993 were all eventually paid, and precludes summary judgment.

---

8. The $39.46 check was no where near the amount needed to satisfy Rand Construction's second quarter 1992 tax liability.

Although the IRS does not cite it, perhaps a better case for the IRS's position is *United States v. Leuschner* 336 F.2d 246 (9th Cir.1964). That decision examines an officer's duty to investigate the status of the corporation's withholding taxes once he or she becomes aware of a tax delinquency. Upon close review, though, it is distinguishable when compared to the facts of this case.

In *Leuschner*, a company's chief executive officer spent much of his time in the field and left cosigned checks with the company controller to pay bills. He did not know at the time that the controller was not paying over the withholding taxes to the IRS. Under those circumstances, the court noted a question of fact existed concerning whether the officer's failure to pay the taxes was willful, in that the facts could be construed that the officer was "negligent, which is not willfulness." *Leuschner* 336 F.2d at 248. However, where the same officer started up a second company, employed the same controller knowing that the controller had in the past failed to pay over the withholding taxes, and did nothing to prevent a recurrence of unpaid taxes, the officer's conduct constituted willfulness as a matter of law. *Id.* at 248.

Even under *Leuschner*, it is questionable whether, despite Debtor's knowledge of the past due tax status for the first three quarters of 1993, that he failed to satisfy his duty to investigate and ensure that either the 1992 taxes were paid or that future taxes would be paid as they became due. As in *Leuschner*, Debtor operated primarily in the field and occasionally signed checks prepared by Mrs. Pugh at the office. He reviewed the cash flow spreadsheets on a monthly basis, but

there is no evidence that, assuming he knew that the taxes for the first three quarters of 1993 were unpaid, he failed in his duty to investigate further. Again, the taxes for the first three quarters of 1993 were eventually paid, and neither party offered any insight into the circumstances surrounding their payment. Under these facts, the possibility exists that Debtor was merely negligent in his failure to investigate the status of prior tax years or to ensure that the taxes for the fourth quarter of 1993 were paid as they became due, precluding summary judgment upon the issue of willfulness.

In short, genuine issues of material fact remain for trial as to whether Debtor willfully failed to pay the taxes.

**C. Debtor's Objection to the Amount of the IRS's Claim.**

 Debtor's objection contests the amount of unpaid withholding taxes that the IRS claims is due in its proof of claim. Obj. at 1, ¶ 2, Docket No. 12.[9] However, in Debtor's submissions in response to the IRS's motion for summary judgment, they contest only those amounts assessed for the fourth quarter of 1993, arguing that Mr. Rand falsified the documentation upon which the IRS relied in calculating its assessment. Opp. at 1, ¶ 1, Docket No. 22.

Apparently, Mr. Rand did not prepare and file a Form 941, an "Employer's Quarterly Federal Tax Report," for the fourth quarter of 1993 until November, 1995. This form indicated gross wages had been paid to employees in the amount of $66,234.69, and that the taxes due were $18,397.91. Opp., Ex. 1, Docket No. 22. To attack the information in the Form, Debtor submitted a copy of Rand Con-

9. Debtor objected to the amount of the secured claim, which in the IRS's initial Proof of Claim totaled $11,420 and included all of the § 6672 penalty for both periods at issue. *See* Proof of Claim No. 1.

struction's checking account register for October 1, 1993, through December 31, 1993, arguing that it showed the amounts paid to employees by the corporation were much less. Opp., Ex. 4, Docket No. 22. However, it is undisputed that the checking account record reflects only the net amount of each payroll check. The gross amount of the paychecks, and any withholdings from those checks, would have been indicated on the check "stubs." Janik Decl., Ex. H, Victoria Pugh Depo. at 22, 73; Ex. Q (*see, e.g.,* check stub number 1698, indicating tax withholdings), Docket No. 21. Debtor submitted only the check stubs for December, 1993. Opp., Ex. 6, Docket No. 22. They did not submit all the relevant check stubs to establish the company's gross payroll and the amounts withheld for the entire quarter.

Furthermore, the IRS's figure for all of the § 6672 penalty representing unpaid taxes appears to be conservative. The IRS's proof of claim assesses § 6672 taxes totaling $14,674.63, which includes the taxes owed for both 1992 and 1993. This figure is substantially less than the figure reflected in Form 941 for fourth quarter 1993 alone.

Because Debtor is the objector, it was his burden to present evidence sufficient to overcome the *prima facie* validity of the amount of the IRS's claim. *See In re Holm,* 931 F.2d 620, 623 (9th Cir.1991) (requiring objecting party to produce evidence and show facts sufficient to defeat creditor's claim by probative force equal to that of the allegations in the proof of claim itself); *Pugh,* 157 B.R. at 901 (stating that the objecting party has burden of presenting sufficient evidence to overcome the *prima facie* validity of a properly executed and filed proof of claim). Debtor failed to do so, and the IRS's motion for summary judgment concerning the amount of its claim should be granted.

## Conclusion

The IRS's motion for summary judgment will be granted in part. The Court concludes the IRS is entitled to summary judgment as to the amount of the taxes it claims to be due, which amount was not adequately disputed by Debtor. In addition, the Court concludes Debtor was, as a matter of law, a "responsible person" during the second quarter of 1992 and the fourth quarter of 1993, and summary judgment for the IRS is appropriate on this issue as well.

However, summary judgment is not justified as to the issue of whether Debtor willfully refused to pay the withholding taxes. A genuine issue of material fact concerning the extent of Debtor's knowledge of the taxes exists, and, assuming the IRS can show Debtor knew of the unpaid taxes, whether his subsequent conduct constituted voluntary, conscious and deliberate acts to prefer other creditors over the IRS.

A separate order will be entered.

For the reasons set forth in the Court's Memorandum of Decision filed herein, and for other good cause,

**IT IS HEREBY ORDERED THAT** the United States' Motion for Summary Judgment, Docket No. 20, be and is hereby **GRANTED IN PART.** The United States is entitled to summary judgment concerning the amount of taxes due from Debtor and that Debtor was a "responsible person" for purposes of 26 U.S.C. § 6672 during the second quarter of 1992 and the fourth quarter of 1993.

However, the motion for summary judgment is hereby **DENIED** as to the issue of whether Debtor willfully failed to pay the withholding taxes for 1992 and 1993.

The Clerk is directed to schedule the remaining issues for an evidentiary hearing.